CHRISTIAN BOARD OF PUBLICATION, a pro forma corporation, Petitioner-Appellant,

v.

The DIVISION OF EMPLOYMENT SECURITY OF DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS OF STATE OF MISSOURI, and the Industrial Commission of Missouri, Respondents.

No. 22157.

Kansas City Court of Appeals.

Missouri.

Feb. 7, 1955.

Robert E. Blake, Henry C. M. Lamkin, Cobbs, Blake, Armstrong, Teasdale & Roos, St. Louis, for appellant.

Lloyd G. Poole, George Schwartz, Howard L. McFadden, Jefferson City, for respondents.

DEW, Judge.

An order of the Industrial Commission of Missouri holding the petitioner liable for a certain period under the Employment Security Law of the state was affirmed by the circuit court, from which judgment of the court the petitioner has appealed.

For convenience we shall refer hereinafter to the appellant as the "petitioner", to the respondent The Division of Employment Security of the Department of Labor and Industrial Relations as the "Division", and to the Industrial Commission of Missouri as the "Commission". The matter before us grows out of the provisions of Chapter 288, RSMo 1949, entitled "Unemployment Compensation Law", as amended, Laws of Mo.1951, pages 564–611, V.A.M.S. § 288.010 et seq.

The petitioner, on March 2, 1938, filed with the Missouri Unemployment Compensation Commission an "application for exemption" from the coverage of the Unemployment Compensation Law. The result of that application was a ruling by the Commission that petitioner was not an employer subject to the Unemployment Compensation Tax. Petitioner continued its business thereafter without further challenge of such status until October 30, 1951, when one of its employees, James T. Walsh, filed with the Division a statement claiming credits because of his employment by the petitioner. Out of that claim a further investigation of the petitioner ensued, whereupon the Division on January 16, 1952, by an administrative order, revoked the order of exemption of 1938, aforesaid, and on January 23, 1952, ordered compliance therewith to cover the period beginning January 1, 1950, and established wage credits for Walsh. Thus, two subjects of inquiry were ruled upon, namely, the liability of the petitioner on the Walsh claim entitled "Claim No. A–298–52" and the general liability of petitioner under the Employment Security Law of Missouri, entitled "No. E–10–52".

On January 28, 1952, petitioner protested the administrative rulings on both of the above inquiries, and on the next day requested an appeal to the Division. This was authorized by Section 288.160, Laws of Mo.1951, p. 592, V.A.M.S. § 288.190. By agreement the two inquiries were then combined for the purpose of the hearing, which was held before a referee of the Division, sitting as an "Appeals Tribunal", on March 13, 1952. The claimant James T. Walsh failed to appear and three times wrote letters stating his desire to abandon his claim and not to be annoyed by the same. For the purposes of the present appeal, we shall consider the Walsh claim, "Claim No. A–298–52", as having been abandoned.

On June 10, 1952, the appeals referee rendered a decision affirming the administrative order of the Division in "Claim No.

E-10-52", now under consideration. The petitioner then made application for review by the Commission, which the Commission denied, and ordered the findings of fact and decision of the Appeals Tribunal of the Division be deemed the decision of the Commission. Such is also the effect of such denial under the provisions of Section 288.-170, Laws of Mo.1951, p. 593, V.A.M.S. § 288.200. Thereupon petitioner brought this action for a review of the decision of the Commission by the Circuit Court of Cole County, Missouri. On March 29, 1954, the circuit court of that county affirmed the decision of the Commission. The present appeal was then taken by the petitioner to this court.

At the hearing before the Appeals Tribunal of the Division, the parties stipulated as to the facts, removing all disputes in that respect. The substance and effect of the material facts agreed upon are stated below. The Christian Church is a large religious organization with an estimated 1,-750,000 members. It publishes, among other literature, the "Christian Evangelist", a paper devoted to the promotion of the church and education of its membership. Prior to 1912, a stock company called the "Christian Publishing Company", printed and published the church paper and other religious literature for the church. In 1912, that company was acquired, dissolved and its assets given to the Christian Board of Publication, the petitioner, which was organized under a pro forma decree, as a part of the organization of the Christian Church.

The corporate charter of the petitioner contains, among other provisions, the following paragraph:

"Fifth: This association is formed to promote religious education among the members of churches and Sunday Schools, and among the people generally, and for the advancement and extension of knowledge and learning and in furtherance of the purposes above mentioned this Association may publish, or cause to be published, and distribute, or cause to be distributed, by sale, gift or otherwise, such books, papers and periodicals and pamphlets as may from time to time be deemed expedient and proper; and may acquire and publish, among other things, a paper known as 'The Christian Evangelist', now published in the City of St. Louis, Missouri, and other church and Sunday School papers; and for such purposes may purchase, or otherwise acquire, own and operate the necessary printing outfits, plants and establishments, and may own, lease or otherwise acquire and hold such real estate as may be necessary or expedient for such purposes".

No director or officer of the petitioner has ever received any remuneration for his services nor for attendance at directors' meetings, nor did they receive any gratuities in return for their assistance. The only contributions received by the petitioner were those donated prior to its incorporation and the receipts earned from its operation. The sole contributions made by the petitioner during its corporate life have been to organizations controlled by the Christian Church, such as United Christian Missionary Society, a nonprofit corporation, the Board of Christian Extension of the Disciples of Christ, and the Pension Fund of the Disciples of Christ. At the hearing before the Division, after the order of 1952, revoking petitioner's exemption ruled in 1938, it was disclosed that some of the operations of the petitioner were of such character that, in the words of petitioner's brief, they "did not seem to come within the categories of 'religious, charitable, scientific, literary or educational' ".

It was admitted at the hearing before the Division, among other things, that in the plant of the petitioner it printed a very large amount of material for the C. V. Mosby Company and had been doing so at least since the petitioner was ruled exempt in 1938, which materials consisted of medical books, medical journals, medical texts, tracts, and treatises for the Mosby Company, which the latter used for profit and distribution. In 1938 the net sales figures from the petitioner to the Mosby

Company for such services amounted to $244,827.24, which amount, for the year 1950 had reached $675,389.66 and in 1951 to $626,348.07. It was also admitted that printing was done by the petitioner for the National Retail Credit Association, engaged in the business of retail sales for profit and in the dissemination of credit information for the use and education of credit men as to sound credit practices. Figures of such printing services to that company by the petitioner was $8,932 in 1937–1938, whereas in 1950, such net sales to that organization amounted to $36,216.91 and $39,543.54 in 1951.

Another customer of the petitioner was the Sunshine Press (Henry F. Henrick's Publications) of Litchfield, Illinois, dealing in booklets containing moral tracts. To that concern the petitioner made net sales in the period of 1937–1938, in the sum of $20,937.-53, as against $77,638.32 in 1950, and $87,-369.24 in 1951.

The petitioner also operated the Bethany Book Store as an integral part of it. The store occupied the first floor of the printing plant and office of the petitioner in St. Louis and was used as a place for the sale of various religious, scientific, educational and literary publications of petitioner, and for the convenience of its customers, publications of other religious denominations were there offered for sale. It also filled mail orders from Sunday School and Churches, and carried a stock of Church and Sunday School paraphernalia, supplies and equipment. The stock of nonreligious materials of the store was less than one percent of its entire sales. The net sales of the store in 1950 was $61,644.33 and $72,692.56 in 1951. There were other items of outside printing shown in evidence such as $677.50 in 1950, and $676.00 in 1951, for the printing of a catalog for Eureka College. Also there appeared an item of $380 for "hospital", which represented the publication of a book for the Barnard Skin and Cancer Hospital, a book entitled "Dr. Moore's Collected Studies". There were other items of a nonreligious character in 1950–1951, consisting of miscellaneous publications, $2,344.20 in 1950 and $2,947.21 in 1951. Numerous exhibits of the printed material referred to were attached to the stipulation of facts, including petitioner's financial reports for the years in question.

It is admitted that during the years 1950 and 1951, the petitioner employed more than eight persons regularly at all times. As to its disbursements from surplus income during the year 1950, a total sum of $13,584.51, petitioner paid out as follows: United Christian Missionary Society, $11,278.15; National Christian Missionary Society, $2,-000; Board of Church Extension $250; Miscellaneous Small Amounts $56.36. The total sum so expended in 1951 was $16,019.-47, as follows: United Christian Missionary Society, $5,250.77; Park Avenue Christian Church, $5,000; National Christian Missionary Convention, $2,000; Promotion for Christian Unity, $850; Campbell Home (the home of Alexander Campbell, one of the early leaders of the Disciples of Christ at Bethany, W. Virginia) $2,500; Home and State Missions Planning Council, $300; Miscellaneous Small Amounts, $118.70.

The Division, through its appeals referee, rendered in writing its finding of facts and conclusions of law in the inquiry at hand, which he designated as follows: "In the matter of whether services performed after January 1, 1950 for Christian Board of Publication, a corporation, are excluded from the definition of 'employment' subject to the Missouri Unemployment Compensation Law and the Missouri Employment Security Law by the provisions of RSMo 1949, Section 288.020.9(5) (f) and Laws of 1951, Senate Bill No. 36, Section 288.030.16 (6) (f) [V.A.M.S. § 288.030, subd. 16(6) (f)], and whether Christian Board of Publication, a corporation, is an 'employer' as defined in RSMo 1949, Section 288.020.8, and Laws of 1951, Senate Bill No. 36, Section 288.030.14 [V.A.M.S. 288.030, subd. 14], with respect to the calendar years 1950 and 1951". After setting forth the fifth paragraph of the petitioner's Articles of Incorporation, hereinbefore quoted, the referee's findings and conclusions were as follows:

"The Articles of Association further provide that the appellant's affairs shall

be managed by a Board of Directors; that no part of its property or profits shall inure to the benefit of any director; and that net income and surplus which are not needed for the expenses or extension of the business shall be paid to such agencies of the Christian Church as the Board of Directors may select. No director or officer has ever received any remuneration for his services. According to the By-Laws, all directors must be members of the Christian Church. From time to time contributions have been made solely to non-profit organizations controlled by the Christian Church.

"The appellant maintains an office building and printing plant in St. Louis, Missouri. During 1950 and 1951, it employed more than eight persons regularly at all times. It publishes a religious paper and prints sunday school literature. It also operates a book store located within its printing plant and office building in which are sold its various religious, educational, scientific and literary publications, and the publications of other religious denominations. It also fills mail orders from sunday schools and churches for printed materials, and carries a stock of church and sunday school paraphernalia, supplies and equipment.

"In addition to the above activities the appellant does job printing work for outside non-religious organizations. Among these are a business corporation engaged in the sale for profit of medical books, a business corporation engaged in the sale for profit of booklets containing moral tracts, and a retail credit association. During 1950 and 1951 net sales of job printing work to these three outside non-religious organizations amounted to more than one-third of the appellant's total sales and net operating income arising out of job printing work for outside organizations amounted to more than one-third of the appellant's total operating income.

"The Referee finds that the appellant's job printing operations for outside business organizations were not in accord with the religious and educational purposes for which it was organized; that such operations were substantial in nature, and that the appellant was not operated during 1950 and 1951 exclusively for religious and educational purposes. The Referee further finds that during 1950 and 1951 the appellant employed more than eight persons regularly at all times and that it therefore had in employment eight or more individuals for some portion of a day in each of twenty different weeks in each of the calendar years 1950 and 1951.

"Conclusions of Law:

"Section 288.030, Missouri Employment Security Law, Senate Bill No. 36, as enacted in 1951 [V.A.M.S. § 288.030], provides in part as follows:

"'14. "Employer" means:

"'(1) Any employing unit which for some portion of a day, in each of twenty different calendar weeks, within either the current or the preceding calendar year, had in employment, but not necessarily simultaneously, eight or more individuals * * *;

"'16. "Employment" means:

*   *   *   *   *   *

"'(6) The term "employment" shall not include:

*   *   *   *   *   *

"'(f) Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * *.'

"Substantially similar provisions were contained in the Missouri Un-

employment Compensation Law, RSMo 1949, Section 288.020, subsections 8 and 9, in effect prior to July 1, 1951.

"The above provisions, in effect, require that a corporation to be exempt from unemployment taxes must be organized and operated exclusively for the purposes named therein. It is not sufficient that the appellant herein was organized for religious and educational purposes but it must also be shown that it has been operated exclusively for such purposes. In construing the work 'exclusively' it has been held that a slight, temporary or immaterial deviation from the exempted purposes would not deprive a corporation of its exemption but that a substantial deviation would prevent the exemption.

"During 1950 and 1951 more than one-third of the appellant's operations, as measured by net sales and operating income, consisted of job printing work for outside business organizations. This was a competitive business activity. Although much of the outside job work consisted of the printing of medical text books and pamphlets discussing morals, this work was no more religious or educational than the operations of any commercial printing company engaged in the printing of similar matter for private profit. These commercial printers must pay the unemployment tax. If the appellant is allowed to perform the same class of work in substantial amounts without payment of the tax, other printers who do pay the tax are at a competitive disadvantage. The Legislature undoubtedly had this in mind when it required that a corporation must not only be organized for a named purpose in order to be entitled to the exemption from taxes but that it must also be operated *exclusively* for such named purpose. Since it has been found that the appellant was not operated exclusively for the religious and educational purposes for which it was organized, the Referee holds that service performed in the employ of the appellant constitutes 'employment' as defined in the Missouri Unemployment Compensation Law and the Missouri Employment Security Law. The Referee also holds that the appellant was an employer as defined in the Missouri Unemployment Compensation Law and the Missouri Employment Security Law with respect to the calendar years 1950 and 1951.

"Decision:

"The administrative determination of the Division is hereby affirmed. Service performed in the employ of Christian Board of Publication constituted employment and Christian Board of Publication was an employer with respect to the calendar years 1950 and 1951."

It is the function of this court, in such proceeding as this, to determine whether the findings and decision of the Commission "are authorized by law, and * * * are supported by competent and substantial evidence upon the whole record", and to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it, and whether the circuit court on review properly ruled on that issue. Constitution of Missouri 1945, Article 5, Section 22, V.A.M.S.; Kansas City v. Rooney, 363 Mo. 902, 254 S.W.2d 626; Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136, 142. It is the function of the Commission and not of the reviewing courts to determine the facts in such proceedings, and in the instant case, they are stipulated, as we have shown. As stated, the findings and decision of the Division, through its Appeals Tribunal, are deemed to be the findings and decision of the Commission. Section 288.170, Laws of Mo.1951, p. 593, V.A.M.S., § 288.200.

The Commission had before it the fact that all of the terms of the charter above mentioned had been complied with by the petitioner except that the petitioner's operation in respect to printing and publishing services had been extended to cover

huge quantities of nonreligious materials for customers using the same for their own commercial purposes and profits, from which outside business the petitioner received great sums of money annually. It was admitted that in 1950, the petitioner's net sales of medical books, tracts, journals and treatises printed by it for the C. V. Mosby Company aggregated $675,389.66, which amounted in 1951 to $626,348.07; that the printing of credit information and data for the National Retail Credit Association in 1950 brought the petitioner a net aggregate sum of $36,216.91, and $39,543.54 in 1951. Net sales to the Sunshine Press in 1950 of booklets containing moral tracts brought $77,638.32 in 1950 and $87,369.24 in 1951. There were other services unconnected with the church and its agencies, such as college catalogs, and a book on the subject of cancer, written by one "Dr. Moore", printed for a hospital.

The Commission also had before it from the financial statement agreed to, the facts that the nonreligious materials printed and published accounted for over 39 percent of the total sales in 1950, and over 35 percent of the total sales in 1951, and accounted for more than 51 percent of the total net income for 1950, and over 32 percent of the total net income for 1951. The total net income for 1950 was $160,746.38. Of this $82,300.53 was received from printing jobs for the Sunshine Press and National Retail Credit Association and the Mosby Company. In 1951, out of a total net income of $160,761.42, the receipts from the three above named companies were $52,375.21. The statute exempts from the provisions of the Employment Security Law, services performed in the "employ of a corporation * * * organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual". Section 288.020, subd. 9 (5) (f), RSMo 1949, as amended, Section 288.030, Laws of Mo.1951, p. 570, V.A.M.S. § 288.030, subd. 16(6) (f). It will be noted that the statute requires such exempt corporation to be *both organized and operated* exclusively for the purposes named.

Petitioner takes the position that under its charter it was organized exclusively for religious and educational purposes, and submits that the only question remaining is whether or not, under the facts, it has deviated from the requirement that it be "operated" for such purposes. It denies any such deviation; denies that competition with private industries "with a competitive edge" is a determining factor on the question of "exclusive operation" for its proper purposes. Petitioner points out that according to the facts all of its net profits were expended for religious purposes; that its religious publications made a profit of $59,267.38 in 1950, and $58,262.84 in 1951, with which to accomplish its objectives.

The petitioner further takes the position that the ruling complained of is primarily a revocation of the former order of exemption in 1938, which was not authorized unless a change in petitioner's purposes or operations be established, which, petitioner claims, was not done.

The Commission contends that whether or not the purpose of the petitioner's organization has been changed; that despite the fact that net profits made by petitioner's outside job printing and publishing have been disbursed wholly to religious agencies approved by the Christian Church; that, nevertheless, the present ruling is based on conditions found as of 1950 and 1951, which disclosed that the quantity and character of the petitioner's operations have substantially deviated from "operating exclusively" for religious and educational purposes. The Commission further maintains that the statute, Section 288.020, subd. 9 (5) (f), RS Mo 1949, as amended, Section 288.030, Laws of Mo.1951, p. 570, V.A.M.S. § 288.030, subd. 16(6) (f), describes what "services" are not to be included in the Missouri Employment Security Law; that the facts surrounding each employment determine whether it is subject to employment taxes; that, in view of such facts, the liability for the tax in a given case results by operation of law; that substantially the same pro-

visions were contained in the law in 1937 and 1938, and that in June, 1938, the services of the petitioner were ruled exempt from the tax, as based on conditions that had obtained for at least a year previous; that since the statute requires conditions authorizing the tax to have existed for at least a calendar year, prospective exemption can never be made, but only on past conditions existing for at least a calendar year.

We shall turn our attention first to the petitioner's point that the ruling of the Commission directly involved in this appeal is retroactive and is void for that reason. Petitioner correctly avers that to hold it liable under the Missouri Employment Security Law is tantamount to levying a tax against it. Howell v. Division of Employment Security, etc., 240 Mo.App. 931, 222 S.W.2d 953. As of July 1, 1951, Section 288.130, Laws of Missouri 1951, page 588, permitted a deputy of the petitioner to make an ex parte determination of an employer's liability for the Employment Security Tax. Prior to that date the deputy was not given that authority. Thus, it is claimed, the deputy, on January 16, 1952, only six months after his authority to make such determination, ruled the petitioner liable for the tax from January 1, 1950. It is contended that since the deputy had no authority to make such determination prior to July 1, 1951, he could not thereafter, under a new statute, revoke petitioner's exemption over a period of two years prior to the receipt of such authority, July 1, 1951.

The former statute, Section 288.180, RS Mo 1949, permitted the Division to make administrative determination of an employer's liability for employment tax without notice or hearing, and to reopen the case when the Division found such as essential to the objectives of the law. The new Section 288.130, subd. 3, Laws of Mo.1951, p. 588, V.A.M.S. § 288.130, subd. 3, substantially gives the same authority to the deputy, with right of review by the Appeals Tribunal of the Division, and authority on the part of the deputy to reopen the matter, for good cause, on notice, for reconsideration.

In our opinion an employment security tax in Missouri for each calendar year is a separate transaction, and a determination of liability as to one year is no adjudication as to another, much less would an ex parte administrative order affecting one such year be binding on all parties as to subsequent years. The ruling of 1938 did not preclude a different ruling for the years 1950 and 1951, and nothing appears in the statute to withhold from the deputy the right to rule respecting the employer's liability for a period prior to July 1, 1951. Referring to a similar principle in the income tax law, it was said in In re Breuer's Income Tax, 354 Mo. 578, 190 S.W.2d 248, 250: "The rule, in this situation, stated by the American Law Institute, is as follows: 'Where a question of law essential to the judgment is actually litigated and determined by a valid and final personal judgment, the determination is not conclusive between the parties in a subsequent action on a different cause of action, except where both causes of action arose out of the same subject matter or transaction; and in any event it is not conclusive if injustice would result.' Restatement of Judgments, § 70, p. 318. This rule is particularly applicable to tax questions. See Restatement of Judgments, pp. 324, 325. The tax for each year is a separate and distinct transaction and each action for collection is a different cause of action from those of prior years. It would give one taxpayer an unfair advantage over others, and be unjustly discriminatory, if through inefficiency or neglect of the collecting officers, to appeal an erroneous decision on a question of law, it should be held that he would be relieved for all time from paying taxes all others must pay. We, therefore, hold that the judgment in the 1940 tax abatement proceeding is not res judicata of the questions of law herein presented." We rule this point against the petitioner.

It is not determinative of this controversy that petitioner did not depart from the original purposes of its organization, if that be a fact, or that its charter permitted its outside printing jobs in evidence, or that petitioner made profits out of such services, or that it disbursed all of its net income to the Christian Church or to religious agencies

approved by it. If all those things be assumed as facts, this controversy would remain undeterminable unless and until it be ascertained if the *operation* of petitioner's business for the period in question, was "exclusively for religious, charitable, scientific, literary, or educational purposes," as required by the exemption statute. That is the main issue in this case and if the admitted facts disclose that petitioner failed substantially in the years 1950 and 1951 so to *operate* its business, then it must be said that the findings and judgment of the Commission were authorized by law, supported by substantial and competent evidence, upon the whole record; that the Commission could have reasonably made its findings and reached its result upon consideration of all the evidence before it, and that the judgment of the circuit court was proper.

 "The rule generally applied when considering the question of exemptions of the nature now under consideration, that is, on the grounds that the employer is engaged in benevolent, charitable or educational work, is that such an association or organization must be *both organized and operated exclusively* for such purposes. If either fails, then the exemption does not apply." Chamber of Commerce of North Kansas City v. Unemployment Compensation Commission, 356 Mo. 323, 201 S.W.2d 771, 772. (Italics supplied.)

It is true that a deviation from "exclusive operation" in the sense used in tax exemption statutes, in order that an employer may forfeit its exemption, must be substantial. We so held in the case of Division of Employment Security v. Industrial Commission, Mo.App., 242 S.W.2d 593, in which a college maintained lodging quarters and a grill for the accommodation of its own personnel and visitors to the college and the public, in the absence of any such facilities afforded in the town where the college was located. The evidence there was that the total income from the hotel and grill did not exceed two percent of the total income of the college.

In the instant case the agreed facts were that the income from the commercial material sold to the Mosby Company, the Sunshine Press and the National Retail Credit Association alone accounted for over 50 percent of the total income in 1950, and over 32 percent in 1951; that its total sales of such materials in 1950-1951 account for 39 and 35 percent, respectively, of the total sales of all the materials in those years. By no stretch of the imagination or through reasonable liberality of construction can such be considered other than a substantial deviation from the "exclusive" operation for religious and educational purposes required by the statute for the exemption. It follows that the Commission's findings and judgment met all the requirements of the law and were properly affirmed by the circuit court. Accordingly, the judgment of the circuit court is hereby affirmed.

All concur.