**ST. FRANCOIS COUNTY SAVINGS & LOAN ASSOCIATION, a Corporation, Plaintiff-Appellant,**

v.

**INDUSTRIAL COMMISSION of Missouri, Consisting of Smith B. Crowe, George W. Wise and Charles E. Cotes, and Division of Employment of Security, Defendants-Respondents.**

**No. 24275.**

Kansas City Court of Appeals.

Missouri.

Oct. 4, 1965.

E. L. McClintock, Jr., Flat River, for appellant.

Gordon P. Weir, Lloyd G. Poole, Jefferson City, for respondents.

MAUGHMER, Commissioner.

The Industrial Commission of Missouri determined that the St. Francois County Savings & Loan Association, during at least twenty weeks of the 1962 calendar year had in its employment four individuals and therefore became an "employer" subject to the Missouri Employment Security Law, Chapter 288, V.A.M.S., 1959. The Association, defendant before the Commission and appellant here, properly sought and secured a judicial review of such decision by the Circuit Court of Cole County, Missouri. The circuit court affirmed and the Association has duly appealed to this court.

The actual facts are not really in dispute. The main controversy stems from the application of such facts and the legal conclusions which result. The Association, as the name implies, is a savings and loan corporation, operating in a smaller community with its offices in Farmington, Missouri. If it had four individuals in its "employment" for at least a part of twenty weeks during the calendar year of 1962, it was an "employer" subject to the Employment Security Law, was liable for the tax, and the decision of the Commission as affirmed by the circuit court was proper; otherwise it was not subject to the Act and the decision ought to be reversed.

It was established and is conceded that during 1962, the Association had three employees in full time and regular employment. Whether there was a fourth employee depends upon the status of Howard H. McCarty, company president and a director. For his services as director, Mc-

Carty was paid $25 per month, exactly the same as was received by each of the other five directors. Mr. McCarty, as president, was paid an additional $25 per month. He resides in Bonne Terre, Missouri, fourteen miles distant from Farmington. Once or twice each week Mr. McCarty drove to the company offices in Farmington and there in his capacity as president, (a) signed company checks. He said these checks were signed in blank, but that the signature of the company secretary was also required before the checks were issued; and (b) signed a supply of "Pass Books" on which the president's signature was required. He sometimes discussed company affairs with Marie Niedert, who was the company secretary and office manager. He said it would have been possible for him to have completed the signings on the days of the directors' meetings. Mr. McCarty was asked: "Is there anyone connected with the Association that has the right to tell you where to go and when to go, as far as you know?" His answer was: "No, not that I know of." He said that he did "follow the vote of the Board." Mr. McCarty was also one of the Association's regular appraisers, whose duties included evaluating real estate offered as security for loans. He received $75 per year from the company as appraiser regardless of the number of appraisals made. In addition, each appraiser received a nominal fee for each appraisal, but this was paid by the individual loan applicants. Mr. McCarty performed no other services for the company nor did he receive any other or additional compensation. The Association's quarterly returns to the Federal Government reporting deductions for its employees covering withholding of wages and deductions for Social Security did not list Mr. McCarty as an employee.

A deputy for the Division "determined administratively" that Mr. Howard H. McCarty "performed services for wages in 'employment' by * * *" respondent. This finding was affirmed by the appeals referee on June 12, 1963. We quote in part from his finding:

"The evidence shows that Howard H. McCarty, as president, performed some service for the appellant in each week in the calendar year 1962 for which he was paid by the appellant at the rate of $25 a month. As a director he also received $25 a month from the appellant and as an appraiser he received $75 a year. As a director Howard H. McCarty was not an employee of the appellant. The evidence indicates that as an appraiser he was free from the appellant's direction and control. However, as president, Howard H. McCarty was by law subject to the direction and control of the appellant's Board of Directors, whether the Board chose to exercise its control over him or not. As president, Howard H. McCarty was an employee of the appellant."

It is clear from this finding that respondent bases its conclusion that McCarty was in "employment" status solely by reason of his services as president and disclaims that his duties as appraiser or as a director brought him under any company "employment" within the meaning of the Act. On December 6, 1963, the respondent Industrial Commission of Missouri affirmed the decision of the referee and the Circuit Court of Cole County affirmed the Commission.

We are here presented with an appeal from the finding of an administrative tribunal. We are required to review the record in the light most favorable to the decision of the Commission and if there is substantial, competent and credible evidence upon which it could have reached the result it did reach, our duty is to affirm. We may not substitute our judgment under the facts for that of the Commission. We may not set aside such decision unless it is wholly unsupported by the evidence or is contrary to the overwhelming weight of the evidence, or is unauthorized by the law. Handley v.

State of Missouri, Division of Employment Security et al., Mo.App., 387 S.W.2d 247; Union-May-Stern Co. v. Industrial Commission of Missouri et al., Mo.App., 273 S.W.2d 766; Christian Board of Publication v. Division of Employment Security, etc., Mo.App., 279 S.W.2d 55.

The Commission found that McCarty performed services for *"wages"* in *"employment"* and that appellant became an *"employer"* subject to the Missouri Employment Security Law. The three italicized words and their meaning are of vital importance. The Legislature has specifically defined their separate meanings as applied to and under the Act. We quote these definitions:

" 'Employer' means:

"(1) Any employing unit which for some portion of a day, in each of twenty different calendar weeks, within either the current or the preceding calendar year, had in employment, but not necessarily simultaneously, *four or more* individuals (and for the purposes of this definition, if any week includes both December thirty-first and January first, the days up to January first shall be deemed one calendar week and the days beginning January first another such week); Sec. 288.032, V.A.M.S.

" 'Employment' means:

"(1) Service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied, * * *". Sec. 288.034, V.A.M.S.

" 'Wages' defined.

" 'Wages' means all remuneration payable or paid, for personal services including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash. * * *" Sec. 288.036, V.A.M.S.

That the Legislature has the right and authority to define these words as applicable to this particular legislative field is indicated by this statement found in 81 C.J.S. Social Security and Public Welfare § 84, p. 127:

"Subject to constitutional limitations, the legislature has authority to specify what shall constitute employment or who shall be considered an employee, within the meaning of an unemployment compensation act, without being limited by the meaning given to the words under the common law and without regard to existing categories and definitions, * * *".

Appellant in its brief says: "The only question presented is whether the decision of the Industrial Commission was supported by substantial and competent evidence." The statute requires that four individuals be in employment status for at least a part of twenty different weeks during a calendar year. It is conceded that there were three such employees during 1962. The ultimate and only inquiry, therefore, diminishes to whether Howard H. McCarty was in "employment" by the corporation for the required period during 1962. Appellant invites our attention to Voss v. Merchants Dairy Co. et al., Mo.App., 373 S.W.2d 662, where the president, manager and half-owner of the corporation was held not to come under the Workmen's Compensation Law, and to Durant v. Industrial Products Mfg. Co., 241 Mo.App. 266, 235 S.W.2d 574, where the court refused to apply a penal statute for undue delay in the payment of wages. The tests and definitions under those laws are not the same as under the Unemployment Security Law.

It is true that generally the higher officers of a corporation, especially directors, are distinguished from the usual workers or employees. In attempting to define the word "employer" we find this language in 56 C.J.S. Master and Servant § 1, pp. 26, 27:

"The words 'employer' and 'employee' are correlative; and, except where superseded by statutory defini-

tions, the common-law definitions of these terms still obtain. The term 'employer' is variously defined as one who employes, one who engages or keeps in service; one who uses or engages the services of other persons for pay; a person who has another in his employ to do certain things in a regular and successive way; * * *."

The Superior Court of New Jersey in Paramus Bathing Beach, Inc. v. Division of Employment Security, etc., 31 N.J.Super. 128, 105 A.2d 860, 862, considered whether company officers who rendered part time services to the company were in "employment" within the meaning of the New Jersey Unemployment Compensation Law. That Act, like ours, required that four or more individuals be in employment in each of *twenty* different weeks. The company had four officers, president, vice-president, secretary and treasurer. The company business was the operation of a bathing beach—a seasonal activity running from Decoration Day until Labor Day. The secretary and the treasurer were paid $200 per month for the entire year. The president and vice-president were paid $2,000 each, biannually. All four worked from Decoration Day until Labor Day in preparing the bathing beath for use and keeping it in operation. The president and vice-president also at all times operated their private businesses. It was ruled that all four were in "employment." Speaking on the subject the court said:

"The statute defines 'employment' to mean service performed for remuneration or under any contract of hire (citing cases). The element of wage, price, or reward is inherent in the word 'hire'. (citing case). In the particular with which we are here concerned, 'employment' imports the existence of a relationship intrinsically that of employer and employee with the normally affiliated compensation.

"We recognize that a corporation is a separate and independent entity, and that its officers are customarily its agents and servants under whose stimulus and dictation and through whose activities the corporate business is conducted (citing cases). Such an engagement in which the officer actively participates would seem to constitute the rendition of a service for and on behalf of the corporation. The intimation that the relationship of employer and employee cannot exist between a corporation and its officers is unrealistic."

It is our opinion, buttressed by the authorities and statutory definitions herein cited that: (1) company officers may be in "employment"; (2) such services may be only part time and (3) the compensation may be small and commensurate with part time work. The usual employment or the usual employer-employee relationship connotes some degree of control by the employer. In our particular case Mr. McCarty said that he conformed to the decisions of the Board. Moreover, company officers by statute, as to tenure, duties and compensation, are under control of the directors. Section 351.310, V.A.M.S., 1959.

Viewing the record before us in the light most favorable to the decision of the Commission, we are unable to say it is unsupported by substantial, credible evidence. We cannot say the finding that appellant had four individuals in "employment" within the meaning of the Act is unsupported by the evidence or is contrary to the overwhelming weight of the evidence or is unauthorized under the law.

The judgment is therefore affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.