**DIVISION OF EMPLOYMENT SECURITY, Appellant,**

v.

**James R. HATFIELD and Labor and Industrial Relations Comm., Respondents.**

**No. WD 45310.**

Missouri Court of Appeals, Western District.

April 21, 1992.

Ninion S. Riley, Government Counsel, Jefferson City, for appellant.

John David Landwehr, Victorine Robben Mahon, Jefferson City, for respondents.

Before LOWENSTEIN, C.J., and HANNA and SMART, JJ.

SMART, Judge.

This is an appeal from a circuit court judgment affirming a ruling of the Missouri Labor and Industrial Relations Commission wherein the Commission held that bail bond agents of James R. Hatfield, General Bail Bond Agent, are independent contractors and not employees under the Missouri Employment Security Law. The Division of Employment Security contends that the agents are employees under the Employment Security Law.

The decision of the Labor and Industrial Relations Commission is affirmed by this court.

The Division of Employment Security (hereinafter "Division") determined that as of July 1, 1989, James E. Burns and Norman G. DeGraffenreid, licensed bail bond agents, performed services in employment as defined by § 288.034 RSMo 1986, as amended, and that such services were not excluded under any provisions of that statute.[1] Respondent Hatfield appealed this determination and a hearing was held before an Appeals Tribunal. The referee issued a decision that the agents are independent contractors pursuant to § 288.034.5 and set forth findings of fact which are here summarized:

1) James R. Hatfield is a general bail bond agent, licensed by the Missouri Division of Insurance, and engaged in the business of providing bail bonds insuring court appearances by parties to court actions. Hatfield has been approved by several Missouri courts as an adequate surety for the bonds he and his agents write. Although authorized to write bonds in several Missouri counties, Hatfield writes bonds only from his place of business in Tuscumbia, Missouri.

2) Hatfield is engaged in separate business relationships with James E. Burns and Norman G. DeGraffenreid, both of whom are licensed by the Mis-souri Division of Insurance as bail bond agents. Hatfield and Burns operate as B & H Bonding Service out of an office in Camdenton, Missouri. Hatfield pays the mortgage and Burns pays all other office and business expenses. Hatfield and De-Graffenreid operate as D & H Bonding Service out of DeGraffenreid's home in Eldon, Missouri. DeGraffenreid pays all office expenses connected with D & H Bonding Service. Each agent pays his own costs of advertising. No written agreement exists between Hatfield and Burns or Hatfield and DeGraffenreid.

3) Burns and DeGraffenreid have authority, through powers of attorney from Hatfield, to write bail bonds on Hatfield's surety in amounts not to exceed $100,000.00. All bonds written by D & H Bonding Service are written by DeGraffenreid and all bonds written by B & H Bonding Service are written by Burns.

4) Typically an agent is contacted by a person seeking to secure a bail bond. The agent discusses the bond with that person, including availability of collateral, and decides whether issuance of the bond is appropriate. If so, the agent executes the necessary paperwork, completes the necessary filings, and collects a premium for the bond, usually ten percent of its amount. The agent attaches a separate Power of Attorney, executed by Hatfield, to each bond he writes.

5) Each agent submits a weekly written report to Hatfield wherein he lists all bonds he has written under Hatfield's power of attorney and the amount and premium collected on each bond, attaching copies of related paperwork. With the report, each agent remits to Hatfield fifty percent of the premiums he has collected during the preceding week. The agent retains the remaining fifty percent of the premiums as his compensation. All collateral received by the

---

**1.** In addition to his contention that the bail bond agents are independent contractors under § 288.034.5, Hatfield also argues that his relationship with the bail bond agents is exempted under § 288.034.12(11) which excludes services performed as a licensed insurance agent, licensed insurance broker, or an "insurance solic-itor" compensated solely by commission. Because this court upholds the ruling of the Commission that the agents are independent contractors, it is unnecessary to reach the issue of whether the agents qualify under the insurance exemption.

agents is considered to belong to Hatfield. If the collateral is in the form of real estate, the deed is recorded in Hatfield's name. If, as a result of a nonappearance, a judgment issues against the bond and the collateral securing the bond is insufficient, the agent who wrote the bond is liable to Hatfield for the resulting deficiency.

6) Hatfield issues no policies or instructions to the agents and each agent relies only upon his own judgment and experience in issuing bail bonds. Each agent is free to set his own business hours and determine his own availability for bond requests. Each agent may, at his own discretion and expense, engage the services of others such as clerical workers or bounty hunters.

Neither party challenges the fact findings of the referee. The Division filed an application for review with the Labor and Industrial Relations Commission (hereinafter "Commission") contending the referee had erred in applying the law. The Commission affirmed the decision of the Appeals Tribunal adopting the findings and decision of the referee. The Division filed a petition for judicial review in the Cole County Circuit Court, which affirmed the Commission's decision. This appeal followed.

▮ This cause originates and is governed by Chapter 288, RSMo.1986, the Missouri Employment Security Law. On appeal, the Court of Appeals reviews the decision of the Commission, not the judgment of the Circuit Court. *IXL Mfg. v. Labor & Indus. Relations Comm'n*, 679 S.W.2d 903, 904 (Mo.App.1984). Judicial review of decisions of the Commission is governed by § 288.210, which provides that the Commission's findings of fact, if supported by competent and substantial evidence and absent fraud, shall be conclusive. This court's jurisdiction is confined to questions of law. *Powell v. Division of Employment Sec.*, 669 S.W.2d 47, 50 (Mo.App.1984). This court is not bound by the Commission's conclusions of law, which includes statutory interpretation. It is the duty of the courts to interpret and determine legisla-

tive intent of the Missouri Employment Security law. *Division of Employment Sec. v. Labor & Indus. Relations Comm'n*, 617 S.W.2d 620, 622 (Mo.App.1981).

A general purpose of the Employment Security law is to provide for compulsory setting aside of unemployment reserves for the benefit of persons who become unemployed through no fault of their own. § 288.020. The legislature has specifically declared that this law is to be liberally construed to accomplish that purpose. § 288.020.2.

▮ Effective July 1, 1989, Subsection (5), Section 288.034 was amended to read:

In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: if the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual is an independent contractor.

Under the authority provided by the legislature, the director of the Division of Employment Security has promulgated regulations to efficiently and properly administer this statute. § 288.220.5. The relevant regulation provides in pertinent part:

In order to interpret Section 288.034.5, RSMo (Supp.1989), effective June 30, 1989, the Division shall apply the common law rules applicable in determining the employer-employee relationship under 26 USC Section 3306(i). In applying the provisions of USC Section 3306(i), the Division shall consider the case law, Internal Revenue Regulations and Internal Revenue Service Letter Rulings interpreting and applying that subsection. 8 C.S.R. 10–4.150.

Section 3306(i) of Chapter 26 of the United States Code adopts the definition of employee assigned by § 3121(d), which provides that the term employee means "an individual who, under the common law rules applicable in determining the employ-

er-employee relationship, has the status of an employee." 26 U.S.C. § 3121(d)(2).

In a recent decision, the United States Supreme Court examined whether a party hired to produce copyrighted work is an employee under the general common law of agency. *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). In its analysis, the Court listed the following relevant factors for determining the party's status:

> [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and tax treatment of the hired party.

The Court also referred the reader to the Restatement (Second) of Agency § 220(2) for a non-exhaustive list of factors relevant to determine whether a party is an employee. *Id.* 109 S.Ct. at 2178–79. No single factor is determinative.

Examining the circumstances of the instant case in light of these factors, this court agrees with the Commission that agents Burns and DeGraffenreid are not employees of Hatfield but are independent contractors. The facts, as adopted by the Commission, suggest that there is a definite skill involved in assessing the appropriateness of issuing a bond in a particular case. Each agent is entirely independent. Some other individuals licensed as agents for Hatfield have allowed their licenses to lapse. One of them never wrote a single bond before allowing his license to lapse. The facts show that each agent furnishes at his own expense any supplies or instrumentalities of his practice. The location of the work of each agent is separate and apart from Hatfield's and all three locations are in different towns. Each agent bears the expense of providing his own office, except that Hatfield owns the building in which Burns offices. Burns does not pay rent, but pays all other office expenses.

Burns publishes a business card which does not mention Hatfield or identify any relationship with Hatfield. DeGraffenreid's card refers to D & H Bonding Company, but does not otherwise refer to Hatfield. Burns and DeGraffenreid each pay separately to distribute pens and matchbooks with advertising information. These are distributed to deputies, dispatchers and "whoever who will take them."

The facts further show that each agent has complete discretion over the number of bonds he writes and when and how long he works. The agents do not obtain approval from Hatfield for any bond. Additionally, each agent is responsible for hiring and paying any assistants he may need to operate his business. Each agent is engaged by Hatfield one bond at a time. The agents collect a percentage, usually ten percent, of the face value of each bond written. The monies are paid to the agents, each of whom deposits the funds in his own account. The agent then remits fifty percent of this money to Hatfield and retains the remainder as his remuneration. If a bounty hunter must be engaged to locate the defendant, the agent bears the cost of the bounty hunter.

The appeals tribunal, in attempting to apply federal common law principles, was heavily influenced by a federal revenue ruling holding that certain "bonding agents" engaged by a bonding company are not employees of the company for purposes of the Federal Insurance Contributions Act, the Federal Unemployment Tax Act, or the Collection of Income Tax at Source on Wages Law under the following circumstances:

> ... the agent agrees to execute appearances bonds in all State and Federal courts within a certain territory where a defendant may be required to appear and answer a charge made against him for violation of the law. Rates are established by the company and the agent is

required to collect premiums prior to the execution of the bonds. The agent has authority to issue a bond not exceeding a specified amount without first consulting the company. When a bond is written, the agent receives a stated percentage of the amount of any premium collected by him and an additional amount when the defendant properly appears and the bond is released. The contract may be terminated by either party upon ten days' notice.

The majority of the agents are experienced bondsmen and the company relies on their judgment in the issuance of bonds. No rules or regulations are issued by the company and the agent is permitted to represent other bonding companies and to engage in other business activities. The company does not furnish an office for the agent and all expenses incurred in connection with the execution of the bonds must be borne by him. Rev.Rul. 68–582, 1968–2 C.B. 458. This determination was based on "the usual common law rules applicable in determining the employer-employee relationship." *Id.* The facts set forth in the revenue ruling are very similar to those in the instant case, with no significant distinction. It appears that, essentially, Burns and De-Graffenreid each have a bail bond business. Each has entered into a joint venture with Hatfield.[2] Hatfield has the necessary net worth to be a surety; the agents need Hatfield's power of attorney to be able to write bonds. Otherwise, they have little need of Hatfield. They need Hatfield in the same way a sales representative needs a supplier of product. Hatfield needs them in the same way a manufacturer or supplier needs a sales force. They are supervised much less than is the typical salesperson. The Commission was well justified in its determination that Burns and DeGraffenreid are independent contractors.

■ Appellant claims that control by Hatfield over the agents is mandated by Chapter 374 (which regulates licensing of bail bond agents), citing as authority the

statutory definition of "bail bond agent" as "a surety agent ... who is *employed by* and working under the authority of a licensed bail bond agent" (emphasis added). § 374.700(1). In other words, the argument is that the statutory definition of bail bond agent as "employed by" a licensed general bail bond agent is dispositive because Burns and DeGraffenreid, in order to be licensed, must be "employed" by Hatfield. This court is not concerned in this case with whether Hatfield's agents fulfill all requirements under the licensing statutes, but rather, whether, considering all relevant facts, these agents operate as employees or independent contractors for purposes of the Employment Security Act. The legislature has the authority to define employee for purposes of the Employment Security Law without regard to other statutory categories and definitions. *St. Francois County Sav. & Loan Ass'n v. Industrial Comm'n*, 395 S.W.2d 311, 314 (Mo. App.1965). Similarly, the legislature cannot broaden the reach of the Employment Security Law in an indirect manner by defining bail bond agents, insurance agents, or other licensed agents as "employed" by another party. While the definition of bail bond agent under Chapter 374 may be somewhat instructive, it certainly is not controlling, particularly in a case where the facts are otherwise quite clear.

Appellant contends that Hatfield's control of the agents is a matter of common sense, in that Hatfield would not allow the agents to write bonds on his own personal surety without retaining the right to control the manner and means. Appellant also points out that because Hatfield has, in the past, terminated his relationship with other agents and indicated by his testimony that he would exercise that right in the future, that indicates a right to control by Hatfield. This court finds that these points are indicative of a right to control the results accomplished by the agents but that they do not rise to the level of right to control the manner and means by which the results are to be accomplished. The fact that Hatfield has the right to terminate the relationship

---

**2.** The "partnership" of Hatfield with each of the agents is a very limited form of partnership, a joint venture. No partnership tax returns are filed.

means little. Every agency relationship and most contractual relationships are subject to termination. Appellant's points are denied.

The decision of the Commission is affirmed.

All concur.