CRAWLEY, Judge,
dissenting.
I dissent because I do not believe Cope presented substantial evidence from which the jury could have found that the bounty hunters were employees of Coastal acting within the scope of their employment.
The majority apparently finds substantial evidence from two circumstances: (1) God-win’s testimony was, according to the majority, “evasive and cagey” and the jury was free to disbelieve his answers; and (2) the bounty hunters told the deputy sheriff who arrested them that they “worked for Coastal.” Nei *53 ther circumstance constitutes evidence that Ivey, James, and Herrin were Coastal’s employees.
Although my reading of the record does not lead me to conclude that Godwin’s testimony was deceitful, I cannot deny the fact that the jury was free to disbelieve him. Having a reason to reject evidence, however, is a far cry from being presented with positive evidence to the contrary. Cope presented no evidence that Ivey, James, and Herrin were Coastal’s employees.
Individual bail bond agents and the bounty hunters who assist them have generally been considered independent contractors under the common law. See Division of Employment Security v. Hatfield, 831 S.W.2d 216 (Mo.App. W.D.1992). See generally Taylor v. Taintor, 83 U.S. (16 Wall.) 366, 371, 21 L.Ed. 287 (1872). Typically, they have discretion over the bonds they write and the manner in which they apprehend “bail jumpers.” They usually write bonds for more than one bail bonding company, and they earn commissions rather than salaries. Their incomes are reported on 1099 rather than W-2 forms. The evidence in this ease follows that pattern.
In jurisdictions that have abrogated the common law rule, the bail bond business is often more strictly regulated, and bounty hunters are required to be “employees” of the bonding company. For example, in Florida, a bail bond “runner” (who is the equivalent of a bounty hunter, see Fla. Stat. Ann. § 648.25(8)) must “be employed by only one bail bondsman, who will supervise the work of the applicant, and be responsible for the runner’s conduct in the bail bond business.” Fla. Stat. Ann. § 648.37(2)(c). No doubt, Florida and other jurisdictions with similar statutes have concluded that abuses such as the one that occurred in this case will be less likely if the bail bonding company does “supervise the work of the [bounty hunter], and [is] responsible for [his] conduct.” The evidence in this case simply does not support a finding that Coastal exercised any such supervision or control over the three bounty hunters here.
Testimony by the deputy sheriff who arrested James, Ivey, and Herrin that the bounty hunters told him they “worked for Coastal” added nothing. Whether an employment relationship exists is determined by the evidence as a whole, and not necessarily by how the parties characterize their relationship. Campbell v. Employers Ins. Co., 521 So.2d 924 (Ala.1988). Moreover, the deputy sheriffs testimony was obviously hearsay. See Russell v. License Appeal Comm’n of City of Chicago, 133 Ill.App.2d 594, 273 N.E.2d 650 (Ill.App.1971); Ducharme v. Guidry, 392 So.2d 755 (La.App. 1980).
Russell, supra, was a liquor license revocation case. There, it was alleged that Russell’s license should be revoked because he was the licensee in name only, and was acting as a subterfuge for Wilson, who was not entitled to a license because of a previous revocation. At trial, a police officer was permitted to testify, “[o]ver vigorous objection, ... that Maddox told him that when he worked as a bartender at the tavern in question, he had worked for Wilson.” 133 Ill. App.2d at 596, 273 N.E.2d at 652. The Illinois appellate court held:
“It was error ... to permit [the officer] to testify as to his conversations with ... Maddox. These conversations plainly constituted hearsay testimony, and should not have been allowed. The testimony that Maddox said he worked for Wilson was particularly prejudicial, crucial as it was to the issue as to whether Russell was a subterfuge for Wilson.”
133 Ill.App.2d at 598, 273 N.E.2d at 653.
Ducharme, supra, was a suit to recover damages for the negligent clearing of land. In that ease, Ducharme and Guidry were adjoining landowners. Guidry had contracted with one Stoutes to clear his property. When Ducharme’s property was mistakenly cleared instead, Ducharme sued Stoutes, alleging that Stoutes “was negligent in hiring an incompetent bulldozer operator and in failing to supervise him properly. In addition, [Ducharme] alleged that Stoutes was vicariously liable for his employee’s negligence.” 392 So.2d at 756.
A default judgment was entered against Stoutes and, on appeal, Stoutes claimed that *54 the evidence did not support a finding that the damage to Ducharme’s property was caused by an employee of Stoutes. The Louisiana appellate court agreed. The court noted that the only evidence relevant to the issue was the testimony of one Veazey, who stated that the bulldozer operator had told him, “I work for Harold Stoutes.” 392 So.2d at 756. The court held:
“[T]his hearsay testimony could not be used to establish that the bulldozer operator was [Stoutes’s] employee- [I]n confirming a default, the plaintiff must prove all of the essential allegations of his petition as fully as if they had been specifically denied. Hearsay evidence does not sustain this burden of proving a prima facie case.”
392 So.2d at 757.
Without the objectionable hearsay, all the other testimony pointed to the conclusion that the bounty hunters were independent contractors. I believe the trial court erred by denying Coastal’s motion for a JNOV.