24 C.C.P.A.(Patents)

### In re CHARMAN.
### Patent Appeal No. 3725.

Court of Customs and Patent Appeals.

May 3, 1937.

LENROOT, J., dissenting in part.

---

Kwis, Hudson & Kent, of Cleveland, Ohio, and Joseph W. Milburn, of Washington, D. C. (A. J. Hudson and S. J. Boughton, both of Cleveland, Ohio, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims Nos. 12 to 17, inclusive, and 19 to 24, inclusive, in appellant's application for a patent for an alleged invention relating to improvements in "Bottom Ring for Hot Tops."

Several claims were allowed. Of the rejected claims, Nos. 13 and 19 are illustrative. They read:

"13. The herein described ingot mold assembly comprising, upper and lower ingot mold elements matching horizontally to form a continuous mold cavity a substantial portion of which is within the lower mold element, and a compressible sealing layer of corrugated board combustible under temperature conditions existing during the teeming of an ingot lying horizontally between the adjacent surfaces of the lower and upper mold elements."

"19. The herein described ingot mold assembly comprising upper and lower ingot mold elements matching horizontally to form a continuous mold cavity a substantial portion of which is within the lower mold element, and a highly compressible sealing layer of cellular fibrous material lying horizontally between the adjacent surfaces of the lower and upper mold elements."

The references are: Adams, 1,457,763, June 5, 1923; Ramage et al., 1,813,508, July 7, 1931; Messler et al., 1,893,206, January 3, 1933; Messler et al., 1,893,207, January 3, 1933.

In its decision, the Board of Appeals said:

"Claims 12 to 17, inclusive, are copies of claims 1 to 6, inclusive, of the patent to Messler et al., No. 1,893,206. The instant application is involved in Interference No. 66,227 with the patent to Messler et al., No. 1,893,207. In that interference Charman moved the admission of his claims 12 to 17 for interference with patent No. 1,893,206. This motion was denied by the Examiner of Interferences and on Charman's appeal the examiner's decision was affirmed by this Board.

"The denial of Charman's right to make these claims of patent No. 1,893,206 was based on the holding that the Charman application does not fairly disclose a sealing layer made of material which is combustible under temperature conditions existing during the teeming of an ingot."

It may here be said that Interference No. 66,227, referred to by the Board, was decided by that tribunal and appealed to this court, Charman being the appellee therein. That interference involved but one count, which was claim 18 of appellant's application and claim 2 of the patent to Messler et al., No. 1,893,207. On motion of Charman, the appeal was dismissed on May 4, 1936, because of appellant's failure to prosecute.

Claims 19 to 24 differ from claims 12 to 17 in that they do not contain the limitation that the sealing layer of cellular fibrous material is "combustible under temperature conditions existing during the teeming of an ingot."

Appellant's specification states that the invention has particular reference to "improvements in non-floating hot tops of that class in which metal casings are employed"; that the hot top rests upon the ingot mold during the pouring operation; that the joint between the casing and the hot top must be relatively tight in order to prevent molten metal from entering it; that solidification of molten metal in the joint "tends to 'hang up' the ingot thereby interfering with its natural shrinkage during cooling, and serves to weld the two surfaces together." After a description of the upper surface of the ingot and lower end surface of the hot top, the specification states that one of the objects of the invention is to provide a "yieldable pad or gasket between the hot top casing and ingot mold in order to effect a good seal for this joint, and preferably an extension of this pad or gasket inwardly and upwardly to constitute a lining for a portion of the hot top as a protection for the inner wall thereof."

Figure 2 of appellant's drawings is a vertical section view of a hot top in which the gasket referred to is shown. In his specification appellant describes the gasket, designated by the numeral 19, as "non-inflammable," and states that:

"By the term 'non-inflammable' as herein applied to the member 19 I intend to include any material which will *not* burn or which will burn *with difficulty*, fibrous material being preferred.

"This material should also be somewhat resilient or yielding. * * *" (Italics ours.)

It will be noted that in the group of claims under discussion, 12 to 17, the sealing layer or gasket is composed of a material *"combustible* under temperature conditions existing during the teeming of an ingot." (Italics ours.)

In claims 13, 14, and 16 the material specified is "corrugated board." In claims 12, 15, and 17 it is referred to as "cellular fibrous material."

During the ex parte prosecution of this case, appellant filed affidavits respecting tests made by one Lemmerman, a chemical research engineer, in an effort to show that the decisions in the interference case were based upon an erroneous assumption as to the combustibility of appellant's gasket.

It is stated in the affidavit of Mr. Lemmerman that he conducted certain experiments or tests for the purpose of discovering what, if any, differences would appear in the operation of a mold and hot top "with a gasket of ordinary corrugated board interposed between the hot top and mold," a "gasket of fire-proofed corrugated board," and a "gasket of corrugated asbestos board"; that in making the tests the affiant "used apparatus and conditions simulating, as nearly as it is possible to do in a laboratory, actual working conditions"; that he found that the "effect of molten metal upon gaskets in an assembly of mold and hot top would be essentially the same whether the gasket was made from ordinary *untreated corrugated board* or from the same type of corrugated board treated with a fireproofing agent, in other words deponent found that the corrugated board in each instance was destroyed for approximately the same distance back from the joint exposed to the molten metal"; that the "destruction or disintegration of the asbestos corrugated board at the temperature of molten metal was approximately the same as that of the ordinary untreated or treated corrugated board"; that the apparatus used by him in making the tests consisted of "two steel plates or bars two and one-half inches thick by four and one-half inches wide and twenty-four inches long, which plates were drawn together by means of bolts and nuts until the corrugations were partly crushed, a degree of compression approximately equal to that which would obtain under actual working conditions." Affiant further stated that by his experiments he determined "that corrugated board is inflammable, that is when ignited it burns freely with

a flame, that corrugated board thoroughly treated with trisodium phosphate, as were the samples which he employed in the said tests, is a material which is not inflammable, that is to say it will not burn with a flame even though there be plenty of air to support combustion, that it is a material which is difficult to destroy by combustion although it may be so destroyed slowly or by the continued application of a hot flame, as for instance an air and gas torch flame; * * * that untreated and fire-proofed board of the same physical character, when not subjected to flame, char at the same temperature, that is to say about 500° F.; and that asbestos corrugated board does not begin to char until subjected to a temperature of around 1100° F.; but that all three of these materials when subjected to the temperature of molten iron or steel, that is about 2600° F., char and disintegrate at about the same rate." (Italics ours.)

It was the view of the Patent Office tribunals in the interference proceeding, as stated by the Board of Appeals in the quoted excerpt from its decision, that appellant's application, as originally filed, could not reasonably be said to teach the use of a material "combustible under temperature conditions existing during the teeming of an ingot."

The Primary Examiner discussed the issues in the case at considerable length, and, among other things, stated that appellant's application discloses a non-inflammable annular gasket; that appellant stated in his application, as originally filed, that he intended to use a non-inflammable material somewhat resilient or yielding, "fibrous material being preferred"; that he stated that the term "non-inflammable" was intended to mean material which will not burn or which will burn with difficulty; that the only other references in appellant's application, as originally filed, to the material which he intended to use, were in his original claims 8 and 9, wherein it was referred to as "a non-metallic non-inflammable strip"; that, at the time appellant's application was filed, January 28, 1931, the "only cellular material taught by the art for this purpose was corrugated asbestos board—a well known non-inflammable material," and, since appellant did not mention any specific material in his application, it must be assumed that he intended to refer to

material known to the art; that if he had discovered that "corrugated paper board *which was new to the art*" was satisfactory for "his purpose," he would have specifically disclosed it in his application so as to enable one skilled in the art to make use of it, in accordance with the provisions of section 4888, Rev.St., as amended (U.S.C., title 35, § 33, 35 U.S.C.A. § 33); that as his application stressed the non-inflammable character of the material used as a gasket, appellant did not contemplate the use of ordinary corrugated board for that purpose, and, therefore, the "expression burn with difficulty" should be looked upon "as an attempt to broaden the range of equivalents, a vague and prophetic expression which *contemp*letely fails to satisfy section 4888, R.S."; that in view of the fact that appellant's application, as originally filed, was silent as to the temperature at which his gasket material would "burn with difficulty," the only reasonable interpretation of that phrase is that his gasket material would burn with difficulty *"at the temperature existing in the mold when the metal is poured,"* and, accordingly, held that appellant's application did not contain an adequate disclosure to support appealed claims 12 to 17. (Italics quoted.)

In its decision, the Board of Appeals quoted the following from its prior decision in the interference case hereinbefore referred to:

"The claims in the patent to Messler et al. No. 1,893,206 are limited to a construction in which the sealing layer of cellular fibrous material is combustible under temperature conditions existing during the teeming of an ingot. The patent specification states it is important that the material be combustible at the temperature existing in the ingot mold during pouring. The inner edge of the annular gasket member extends within the mold cavity and the patent states that the portion of the sealing material which extends into the mold cavity is decomposed by combustion or charring with relative rapidity and the material which lies compressed between the two mold elements is consumed relatively slowly. It further states that the patentees have found that even though the sealing material be of a highly combustible nature, the seal formed by it persists for a sufficient length of time to permit the ingot metal to cool below its temperature of high fluidity.

"We do not believe that the Charman application as filed fairly disclosed this concept of using combustible material. The emphasis therein appears to be on the non-inflammable character of the material and while in one sentence it is stated that the material used will not burn or will burn with difficulty, we believe the intention was that the material should be substantially non-combustible. As pointed out by the examiner, the claims in the patent were allowed over the patent to Adams No. 1,457,763 disclosing a sealing member made of corrugated asbestos in view of their inclusion of the limitation as to combustibility * * *"; and affirmed the decision of the Primary Examiner holding that appellant's disclosure was not sufficient to support claims 12 to 17.

It is conceded by counsel for appellant that appellant's right to make claims 12 to 17 must be based primarily upon his disclosure. It is stated by counsel, however, that the purpose of the affidavits was to show that the tribunals of the Patent Office erred in holding that the expression "combustible under temperature conditions existing during the teeming of an ingot," contained in claims 12 to 17, excludes material "which will burn with difficulty"; that the affidavits clearly show that "at least one fibrous material which burns with difficulty is combustible at these high temperatures"; that appellant's application does not specify any particular material to be used as a gasket, and is, therefore, sufficiently broad "to include any yieldable fibrous material which burns with difficulty, such as, for example, fire-proof corrugated board"; that appellant preferred a material so treated as to make it slow burning; that the tribunals of the Patent Office were in error in holding that the phrase "burn with difficulty" implied conditions of temperature prevailing during the teeming of an ingot; that it "is generally recognized that in patent specifications, when no temperature is mentioned, ordinary atmospheric temperatures are intended. This is a well recognized rule particularly in chemical cases. While the present case is not strictly a chemical one, it comes within the field of metallurgy, which is a branch of chemistry, and it would seem should be subject to the rules of interpretation in chemical cases"; that it would be ridiculous to limit appellant's gasket material to such as would "burn with difficulty" under temperature conditions existing during the teeming of an ingot, about 2600° F., as any "fibrous material that will burn at all will burn without difficulty at such an extremely high temperature as 2600° F. It is only at much lower temperatures that this expression could mean anything."

It is conceded by counsel for appellant that the term "non-inflammable" excludes ordinary corrugated board, and that there is nothing in appellant's application "to indicate that he had any intention of using for a gasket, a material which would be freely combustible, that is to say combustible under ordinary conditions." Counsel for appellant argue, however, that appellant did not intend to limit himself to a gasket material which would be non-combustible at the pouring temperature of molten metal.

It would seem to be clear that if counsel for appellant are correct in the position taken by them, that is, that, as no temperatures were mentioned in appellant's application, "ordinary atmospheric temperatures are intended," and that the phrase "burn with difficulty" must be so interpreted, then the same rule should apply to the phrase "which will not burn," and also to the term "non-inflammable." This, we think, is a wholly untenable proposition.

It is suggested by counsel for appellant that the limitation in the claims as to combustibility is not important and does not improve the action of the gasket. That may be so. The question before us, however, is whether the limitations in the appealed claims are disclosed in appellant's application. If they are, he is entitled to make the claims. If they are not, he is not entitled to make them. No authorities need be cited in support of that proposition.

Counsel for appellant further contend that the claims do not call for "ordinary corrugated board," nor "merely combustible material," but do call for "material [including 'treated corrugated board as well as ordinary corrugated board'] which is combustible at the temperature of 2600° F." (which temperature is referred to in the Lemmerman affidavit as about temperature of molten iron or steel), and that the Board erred in holding that the language contained in the appealed claims —"combustible under temperature condi-

tions existing during the teeming of an ingot"—was "equivalent to the term 'combustible' merely."

Although it appears from the decisions of the Primary Examiner and the Board of Appeals that in the interference proceeding it was held that appellant's application did not teach the use of a material "combustible under temperature conditions existing during the teeming of an ingot," the Primary Examiner, in the instant case, stated, as hereinbefore noted, that appellant's "specification is entirely silent as to the temperature at which the material must burn with difficulty but the only reasonable interpretation is that it must burn with difficulty *at the temperature existing in the mold when the metal is poured.*" (Italics quoted.)

The Board of Appeals, in affirming the decision of the Primary Examiner, did not refer to that holding. It must be held, therefore, that it intended to affirm the Examiner therein.

It will be observed that, in his application, appellant specified that he contemplated the use of two kinds of somewhat resilient or yielding cellular fibrous material, namely, that which will not burn, and that which will burn with difficulty. By the term "burn with difficulty" we think it is clear, as stated by the Primary Examiner, that appellant intended to use a gasket material which would burn, although slowly and with difficulty, *"at the temperature existing in the mold when the metal is poured,"* that is to say, it would burn with difficulty under "temperature conditions existing during the teeming of an ingot." (Italics quoted.)

In its decision, the Board stated that the appealed claims "are *limited* to a construction in which the sealing layer of cellular fibrous material is combustible under temperature conditions existing during the teeming of an ingot." (Italics ours.)

We are in agreement with that holding.

The Board further called attention to the fact that the patentees, Messler et al., stated in their specification that it was "important that the material be combustible at the temperature existing in the ingot mold during pouring." The board also referred to the following statements contained in the patentees' specification:

"It should be understood that when an ingot is teemed into the mold, the exclusion of air from the combustible sealing material by the ingot metal itself *prevents instantaneous combustion of the material,* but that on the contrary this *material will char;* the portion *of the sealing material which extends into the mold cavity being decomposed by combustion or charring with relative rapidity, and the material which lies compressed between the two mold elements being consumed relatively slowly.*

"We have found that even though the sealing material be of a highly combustible nature, the seal formed by it persists for a sufficient length of time to permit the ingot metal to cool below its temperature of high fluidity." (Italics ours.)

It may be said at this point that the Primary Examiner held that the words "corrugated board" were intended by the patentees to refer to ordinary corrugated board, which, it may be said, is a highly combustible material.

Assuming that the phrases "corrugated board," contained in claims 13, 14, and 16, and "cellular fibrous material," contained in claims 12, 15, and 17, might be interpreted to mean a "highly combustible material," the claims, nevertheless, are clearly not so limited, but, on the contrary, call for a gasket material "combustible under temperature conditions existing during the teeming of an ingot."

We think it is clear from their specification that the patentees had in mind, and so taught, that that portion of their gasket material which extended into the mold cavity would become "decomposed by combustion or charring with relative rapidity"; whereas that portion of the gasket material "lying horizontally between the adjacent surfaces of the lower and upper mold elements," as stated in the claims under consideration, or, as stated in the specification, the "material which lies compressed between the two mold elements" would be "consumed relatively slowly." (Italics ours.)

Reading appealed claims 12 to 17, therefore, in the light of the patentees' specification, as did the tribunals of the Patent Office, we think it is clear that they were not intended to be limited to a "highly combustible" gasket material "lying horizontally between the adjacent surfaces of the lower and upper mold ele-

ments," but were intended to include materials, which, lying in that position, although "consumed relatively slowly," are "combustible under temperature conditions existing during the teeming of an ingot."

But, even though the patentees' specification be ignored, it is clear, we think, that appellant's application, as originally filed, discloses a cellular fibrous gasket material, which, when "lying horizontally between the adjacent surfaces of the lower and upper mold elements," as called for by the appealed claims, will burn slowly and with difficulty "under temperature conditions existing during the teeming of an ingot." There is no other reasonable interpretation to be placed upon the language "burn with difficulty," contained in appellant's application.

As we understand the Examiner's decision, the tribunals of the Patent Office did not hold in the interference proceeding that a "substance difficult to burn was non-combustible," and we think it is obvious that a gasket material which burns with difficulty under temperature conditions existing during the teeming of an ingot is combustible under such temperature conditions. Accordingly, we are unable to hold that appellant's application, as originally filed, is insufficient to support appealed claims 12 to 17.

As hereinbefore noted, claims 19 to 24 differ from claims 12 to 17 in that they omit the phrase "combustible under temperature conditions existing during the teeming of an ingot." Those claims were held unpatentable by the Patent Office tribunals over the patent to Ramage et al., in view of the patent to Adams, or over Adams alone.

The patent to Adams relates to a method of casting ingots and a seal for ingot molds, and discloses gasket material made of corrugated asbestos paper, a cellular fibrous material. The paper is made into the form of tubes which are cut into rings.

The patent to Ramage et al. relates to an ingot mold, and discloses a gasket material of "sheet metal such as sheet steel, or of heavy paper or other non-refractory material."

It is the contention of counsel for appellant that the patent to Adams does not disclose a corrugated board lying horizontally between the adjacent surfaces of the lower and upper mold elements, as

called for by the appealed claims now under consideration; that not only the corrugations, but also the "lining paper which holds the corrugations in position are placed on edge"; that the patentee "may have deemed it necessary to have his air spaces closed, and may have shown the vertical arrangement of the corrugations on that account."

It is true that the patentee Adams discloses the corrugations in his gasket material as being vertical, although he stated in his specification that they might run horizontally instead of vertically. Whether appellant's corrugations are horizontal in his gasket material, is not important here, as there is nothing in the claims under consideration which calls for a horizontal arrangement of the corrugations. Some of the claims, particularly 19 and 24, call for a "sealing layer of *cellular fibrous material* lying horizontally between the adjacent surfaces" of the lower and upper mold elements; whereas, 20, 21, and 23 call for a "sealing layer of *corrugated board*" lying horizontally between the adjacent surfaces of the lower and upper mold elements. (Italics ours.) Claim 22 merely refers to a "cellular fibrous material lying between the adjacent surfaces of the lower and upper mold elements."

It clearly appears that the gasket (f), in Fig. 1 of the drawings in the patent to Adams, is "lying horizontally between the adjacent surfaces of the lower and upper mold elements," although the corrugations therein appear to be in a vertical arrangement.

We are in accord, therefore, with the holding of the Board of Appeals that appealed claims 19 to 24 are not patentable over the references of record.

However, for the reasons hereinbefore stated, we are of opinion that the board erred in holding that appellant's disclosure was insufficient to support claims 12 to 17, and that, therefore, he was not entitled to make them.

Accordingly, the decision of the Board of Appeals is modified, being reversed as to claims 12 to 17, and affirmed as to claims 19 to 24.

Modified.

LENROOT, Associate Judge, dissents, as to claims 12 to 17.