TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00370-CR







Thomas Wayne Riordan, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BLANCO COUNTY, 33RD JUDICIAL DISTRICT


NO. 535, HONORABLE CHARLES J. HEARN, JUDGE PRESIDING








 Appellant Thomas Wayne Riordan was charged by indictment with the offense of
possession of a controlled substance, to wit: methamphetamine in an amount less than twenty-eight grams. Following a hearing, appellant's motion to suppress evidence was overruled.
Appellant then entered a plea of nolo contendere to the indictment in a bench trial. In accordance
with a plea bargain agreement, the trial court deferred adjudication of guilt, placed appellant on
"probation" for eight years and imposed a fine of one thousand dollars. At the request of both
parties, the trial court expressly granted appellant permission to appeal the ruling on the motion
to suppress evidence.

 Appellant advances the sole point of error that the trial court erred in overruling
his motion to suppress evidence because the search of his private residence and the seizure of
contraband was based on the invalid consent of a third person.

 At the hearing on the motion to suppress, the State assumed the burden of showing
that the search was valid because there was no search warrant. See Russell v. State, 717 S.W.2d
7, 9-10 (Tex. Crim. App. 1986). Sergeant-Investigator James Warnet Semmler of the 33rd
Judicial District Narcotics Enforcement Team testified that he, in the company of Burnet County
Deputy Sheriffs W. T. Smith and Jimmy Ballard, who were working with the Narcotics Task
Force, went to appellant's Blanco County residence about two o'clock in the afternoon on
December 31, 1993. Semmler explained that the officers had received a "tip" that appellant had
marihuana in his home and that he understood the "tip" came from Charlie, appellant's twelve-year-old son. (1) The officers had neither an arrest warrant for appellant, nor a search warrant for
appellant's home. Semmler understood that most individuals would be at work at two o'clock in
the afternoon, but stated that he did not know appellant's working habits or hours.

 Upon arriving at what he knew to be appellant's residence, Semmler related that
the officers knocked at the door and observed an elderly lady inside the house whom Semmler did
not know and had not expected to encounter. As the lady attempted to respond to the officers'
knocks, she fell and requested that the officers come inside to assist her. Once she was seated on
a couch, Officer Semmler learned that she was Dorothy O'Brien, who lived next door. Mrs.
O'Brien pointed to a separate house connected by a ramp to appellant's house. She explained that
appellant was at work and would be home shortly. She also informed Semmler that she was there
to look after Charlie, appellant's son, who was visiting his father, but who was at a neighbor's
house at that time.

 Officer Semmler explained that he had a report there was marihuana in appellant's
home. Mrs. O'Brien stated that there was none. Semmler then had Mrs. O'Brien sign a consent-to-search form, which was witnessed by the other two officers. The signed form gave consent
for a complete search of the premises. It appears the officers had Mrs. O'Brien call Charlie at
a neighbor's house and ask him to come home. When the twelve-year-old boy arrived, the
officers explained their purpose in being there, and requested Charlie's assistance. Officer
Semmler related that the boy wanted to "help" and voluntarily led them on the search for the
marihuana. The record shows that Charlie first led them to a room which appeared to be an
office. Two marihuana plants were found on a shelf above the desk. In the master bedroom
where there was men's clothing, Charlie pointed out a baggie of marihuana in a book case. 
Deputy Ballard testified that in a drawer six feet away he searched and found the
methamphetamine which was the subject matter of the instant prosecution. The contraband was
found in a plastic baggie inside scales that were inside the drawer that Ballard opened.

 The prosecutor called the eighty-year-old Mrs. O'Brien as a witness, though she
was little help to the State in sustaining its burden. Mrs. O'Brien testified that her daughter,
Donna, was married to appellant, and that she lived next door to them in a separate house where
she had her own telephone. She acknowledged that she did not do any cooking and ate her meals
at appellant's house. Sometimes she watched television at appellant's house, and on occasion she
took care of Charlie when he was visiting and appellant and her daughter were working. Mrs.
O'Brien identified her signature on the consent-to-search form but could not recall having
previously seen the document. Mrs. O'Brien did not remember Officer Semmler, and had little
recollection of the events on December 31, 1993, some six months earlier.

 Donna Riordan testified for the defense. She related that she and appellant had
been married about a year and a half; that they had a contract of sale agreement on the premises
where they lived and were making monthly payments; and that they had built a separate house for
her mother. Mrs. Riordan testified that her mother stayed in her own house most of the time, but
the house had been built without a kitchen because she was afraid her mother would hurt herself
cooking. A man was hired to prepare one meal every day for her mother at the Riordan house. 
Sometimes, Mrs. O'Brien would watch television in the living room while using the couch, and
she did have access to the bathroom. Mrs. Riordan explained that Mrs. O'Brien had no control
over the office or master bedroom (that had no connecting bathroom), and that her access thereto
had been expressly prohibited. Mrs. Riordan further related that Charlie, her stepson, slept on
the couch in the living room when he was visiting there. He was forbidden the use of the office
or the master bedroom. The doors to these rooms were always closed although they may not have
been locked.

 At the conclusion of the suppression hearing, the trial court overruled the motion
to suppress. (2) In a suppression hearing, the trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony. Allridge v. State, 850
S.W.2d 471, 492 (Tex. Crim. App. 1991), cert. denied, 114 S. Ct. 101 (1993); Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court may accept or reject all or any
part of a witness's testimony. Taylor v. State, 604 S.W.2d 175, 177 (Tex. Crim. App. 1980). 
In reviewing the trial court's decision, an appellate court does not engage in its own factual
review; it determines only whether the record supports the trial court's fact findings. Romero,
800 S.W.2d at 543. If the trial court's fact findings are supported by the record, an appellate
court is not at liberty to disturb the findings absent an abuse of discretion. Cantu v. State, 817
S.W.2d 74, 77 (Tex. Crim. App. 1991); Dancy v. State, 728 S.W.2d 772, 777 (Tex. Crim.
App.), cert. denied, 484 U.S. 975 (1987). On appellate review, the court will address only the
question of whether the trial court properly applied the law to the facts. Romero, 800 S.W.2d at
543; Vargas v. State, 852 S.W.2d 43, 44 (Tex. App.--El Paso 1993, no pet.). Questions of law
are reviewed de novo. United States v. Jenkins, 46 F.3d 447, 451 (5th Cir. 1995); United States
v. Richard, 994 F.2d 244, 247 (5th Cir. 1993).

 The basic purpose of the Fourth Amendment to the United States Constitution is
to safeguard the privacy and security of individuals against arbitrary invasions by governmental
officials. See Berger v. New York, 388 U.S. 41, 53 (1967); Juarez v. State, 758 S.W.2d 772, 775
(Tex. Crim. App. 1988); Kolb v. State, 532 S.W.2d 87, 89-90 (Tex. Crim. App. 1976). (3) The
Fourth Amendment has been made applicable to the states by virtue of the Due Process Clause
of the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655 (1961). The fourth amendment
provides that "[t]he right of the people to be secure in their . . . houses . . . shall not be violated." 
Physical entry of the home is the chief evil against which the wording of the Fourth Amendment
is directed. See United States v. United States District Court, Eastern District of Michigan, 407
U.S. 297, 313 (1972). Indeed, "searches and seizures inside a home without a warrant are
presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980); Coolidge v. New
Hampshire, 403 U.S. 443, 474 (1971). This rule is subject under the Fourth and Fourteenth
Amendments only to a few specifically established and well-delineated exceptions. Katz v. United
States, 389 U.S. 347, 357 (1967); Juarez, 788 S.W.2d at 775.

 One of the specifically established exceptions to the requirements of both a warrant
and probable cause is a search that is conducted pursuant to consent. Schneckloth v. Bustamonte,
412 U.S. 218, 219 (1973); Davis v. United States, 328 U.S. 582, 593-94 (1946). The protections
afforded by the Fourth Amendment may be waived by an individual consenting to a search. Kolb,
532 S.W.2d at 89-90; Paprskar v. State, 484 S.W.2d 731, 737 (Tex. Crim. App. 1972).

 When relying upon consent to justify the lawfulness of a search, a prosecutor has
the burden to prove by clear and convincing evidence that the consent was freely and voluntarily
given. Bumper v. North Carolina, 391 U.S. 543, 548 (1968); see also Bustamonte, 412 U.S. at
222; Paprskar, 484 S.W.2d at 737. The burden requires the prosecution to show that the consent
was positive and unequivocal, and there was no duress or coercion. Juarez, 758 S.W.2d at 775. 
The burden cannot be discharged by showing no more than acquiescence to a claim of lawful
authority. Bumper, 391 U.S. at 548-49; Amos v. United States, 255 U.S. 313, 317 (1921);
Paulus v. State, 633 S.W.2d 827, 850 (Tex. Crim. App. 1981). Consent to search is not to be
lightly inferred. Meeks v. State, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985). The question
of whether a consent to search was "voluntary" is a question of fact to be determined from the
totality of the circumstances. Bustamonte, 412 U.S. at 227; Paulus, 633 S.W.2d at 850.

 With this background, we turn to the question of consent to search by a third party. 
In United States v. Matlock, 415 U.S. 164, 171 (1974), the Supreme Court reaffirmed that a
warrantless entry and search by law enforcement officers does not violate the Fourth
Amendment's proscription of "unreasonable searches and seizures" if the officers have obtained
the consent of a third party who possesses common authority over the premises or effects sought
to be inspected. "Common authority" rests "on mutual use of property by persons generally
having joint access or control for most purposes." Id. at 171 n.7; see also United States v.
Dearing, 9 F.3d 1428, 1429 (9th Cir. 1993). And it has been said that a third party may properly
consent to a search when the party has equal control over and equal use of the premises being
searched. Becknell v. State 720 S.W.2d 526, 528 (Tex. Crim. App. 1986), cert. denied, 481 U.S.
1005 (1987); Swinney v. State, 529 S.W.2d 70, 71-72 (Tex. Crim. App. 1975); Spears v. State,
801 S.W.2d 571, 575 (Tex. App.--Fort Worth 1990, pet. ref'd); Sallings v. State, 789 S.W.2d
408, 417 (Tex. App.--Dallas 1990, pet. ref'd); Linnell v. State, 767 S.W.2d 925, 927 (Tex.
App.--Austin 1989, no pet.); see also Dawson v. State, 868 S.W.2d 363, 368 (Tex. App.--Dallas
1993, pet. ref'd); Vargas, 852 S.W.2d at 45.

 Appellant does not appear to seriously challenge the voluntariness of the consent
given by the eighty-year-old Mrs. O'Brien, who had no recollection of her encounter with the
officers. Appellant argues that Mrs. O'Brien simply had no authority to grant vicarious consent.

 The record shows that Mrs. O'Brien, appellant's mother-in-law, lived on the same
tract of land in a separate house. She had access to appellant's house for the purpose of taking
her meals, watching television from the couch in the living room, and using the bathroom. She
was not permitted access to appellant's office or the master bedroom. On the day in question, she
was in the living room in the role of a baby-sitter.

 It is clear from the record that the State did not show that Mrs. O'Brien, as a third
party, had common authority over the Riordan home under the Matlock doctrine (mutual use and
joint access and control for most purposes) or equal control over and equal use of the property and
the effects sought to be searched under the holdings of Becknell and Swinney. This is particularly
true when it is remembered that the methamphetamine sought to be suppressed was found inside
a drawer in the master bedroom containing men's clothing. Mrs. O'Brien did not have actual
authority over the area searched. Therefore, her consent to search would normally be invalid.

 This, of course, does not end the matter. When the facts do not support a finding
of actual authority, a search is reasonable if the consent--giver apparently has actual authority. 
Illinois v. Rodriguez, 497 U.S. 177, 188 (1990); Dearing, 9 F.3d at 1429. In Rodriguez, the
Supreme Court adopted the so-called "apparent authority" doctrine,answering the issue expressly
reserved in Matlock, 415 U.S. at 177 n.14. The court held that a warrantless entry by law
enforcement officers onto a person's premises does not violate the proscription of unreasonable
searches and seizures under the Fourth Amendment, where such entry is based upon the consent
of a third party whom the officers, at the time of the entry, reasonably believe to possess common
authority over the premises, but who in fact does not possess such authority. Whether the basis
for a person's authority to consent to a search exists is the sort of recurring factual question to
which law enforcement officials must be expected to apply their judgment, and all that the Fourth
Amendment requires is that they answer such question reasonably. If officers reasonably believed
that the third party had common authority over the place to be searched, then their good faith
mistake will not invalidate the search. This does not mean, however, that they may rely upon
consent given in ambiguous circumstances or that clearly appears unreasonable. Id. at 179-81;
McNairy v. State, 777 S.W.2d 570, 573 (Tex. App.--Austin 1989), aff'd, 835 S.W.2d 101, 105
(Tex. Crim. App. 1991). The apparent authority doctrine for consenting to a search should not
be applied so strictly that it becomes unworkable and places too heavy a burden on police. The
rule, however, does not allow law enforcement officers to proceed without inquiry into ambiguous
circumstances or to always accept at face value the consenting party's apparent assumption or
claim of authority to allow the contemplated search. See People v. James, 645 N.E.2d 195, 203,
204 (Ill. 1995).

 The State bears the burden of proving that the officers were objectively reasonable
in their belief that the person who gave consent had the authority to do so. Rodriguez, 497 U.S.
at 181; James, 645 N.E.2d at 203. The burden cannot be met if officers, faced with an
ambiguous situation, nevertheless proceed without making further inquiry. If the officers do not
learn enough, if the circumstances make it unclear whether the property is subject to "common
authority" by the person giving consent, "then warrantless entry is unlawful without further
inquiry." Rodriguez, 497 U.S. at 188-89; United States v. Whitfield, 939 F.2d 1071, 1075 (D.C.
Cir. 1991).

 In the instant case, the experienced officers with a narcotics task force, acting upon
a tip that appellant had marihuana in his home, proceeded to that residence at 2:00 p.m. on the
day in question, at a time when Officer Semmler acknowledged that most individuals would be
at work. The officers had neither an arrest nor a search warrant, nor, according to Deputy
Ballard, had they attempted to get one. There was no showing of exigent circumstances plus
probable cause to establish an exception to the warrant requirement. See Mincey v. Arizona, 437
U.S. 385, 392 (1978); Bray v. State, 597 S.W.2d 763, 764 (Tex. Crim. App. 1980). (4)

 At the residence that Officer Semmler knew to be the home of Tom and Donna
Riordan, the officers encountered an elderly lady that Semmler did not know and did not expect
to be there. According to the record, a sparse conversation followed. Semmler testified that Mrs.
O'Brien identified herself by name, pointed out that she lived in the separate house nearby, and
that she was in the Riordan home to look after twelve-year-old Charlie, who was not home at the
time. It is not clear when Semmler learned that Mrs. O'Brien was appellant's mother-in-law. (5) 
Under any circumstances, the officers did not make any inquiry to establish her common authority
over the residence. The officer's superficial and cursory questioning of Mrs. O'Brien simply did
not disclose sufficient information to support a reasonable belief that she had the authority to
permit the search. See Whitfield, 939 F.2d at 1075. The officers could not infer such common
authority from Mrs. O'Brien's mere presence or relationship to appellant. She did not assert
ownership in the residence, but even if she had, mere property interest does not imply "common
authority." Id. Moreover, it has been said that it "is a perversion of the apparent authority
doctrine, for example, to hold that the police may reasonably conclude that a person known to be
a baby-sitter had the authority to permit a full search of the premises which she purported to
have." 3 Wayne LaFave, Search and Seizure § 8.3(a) (1987). Mrs. O'Brien never purported to
have the authority to permit the search. Officer Semmler initiated the request for the consent to
search. The consent was not volunteered.

 If the facts and circumstances are such that it would be objectively reasonable to
conclude that the third party who consented to the search did not have common authority to do
so, the police officers's subsequent search will be invalid. James, 645 N.E.2d at 203. We
conclude that the State did not sustain its burden and that the search was invalid because the third
party did not have actual common authority or apparent actual authority. See Dearing, 9 F.3d at
1429. Our holding is based on the Fourth and Fourteenth Amendments to the United States
Constitution. Appellant's sole point of error is sustained. (6)

 The State relies upon an alternative theory to uphold the search based on the actions
of appellant's twelve-year-old son, Charlie. (7) The Fourth Amendment protection against
unreasonable searches and seizures proscribes only governmental action. It is wholly inapplicable
to a search and seizure, even wrongful and unreasonable ones, effected by a private citizen or
individual not acting as an agent or "instrument" of the government or with the participation or
knowledge of any governmental official. United States v. Jacobsen, 466 U.S. 109, 113-14
(1984); Walter v. United States, 447 U.S. 649, 662 (1980); State v. Comeaux, 818 S.W.2d 46,
49 (Tex. Crim. App. 1991); Stoker v. State, 788 S.W.2d 1, 11 (Tex. Crim. App. 1989). The
State argues that the search was made by Charlie, a private individual, and even if wrongful, the
State was not deprived of the right to use the evidence. See Stoker, 788 S.W.2d at 11. The
question is whether Charlie was acting as an "instrument" or agent of the State under the
circumstances described. Coolidge, 403 U.S. at 487; Stoker, 788 S.W.2d at 11. If he was, then
the Fourth Amendment was violated. See United States v. Pierce, 89 F.2d 669, 673 (5th Cir.
1990), cert. denied, 113 S. Ct. 621 (1992); King v. State, 746 S.W.2d 515, 518 (Tex.
App.--Dallas 1988, pet. ref'd). The two factors to be considered in determining whether a person
is acting as an agent or instrument are (1) whether the State or its officials knew of, and
acquiesced in, the intrusive conduct, and (2) whether the party performing the search intended to
assist law enforcement efforts or to further his own ends. United States v. Bazan, 807 F.2d 1200,
1203 (5th Cir.), cert. denied, 481 U.S. 1038 (1987); Dawson v. State. 868 S.W.2d 363, 369
(Tex. App.--Dallas 1993, pet. ref'd). Both factors leasd us to conclude that Charlie was an agent
or instrument of the State. Charlie was summoned home. The officers explained to him their
purpose in being in the home and requested his assistance in the search. Charlie willingly agreed. 
The State's brief explained that "from the facts it would appear that there was not much stopping
Charlie from showing the officers the substances they were looking for." Charlie then led the
officers first into appellant's office and then his bedroom pointing out the marihuana in both
rooms. Clearly, in light of all of the circumstances, Charlie was the agent and instrument of the
State, Comeaux, 818 S.W.2d at 49, and the Fourth Amendment applies. A police officer cannot
justify a warrantless entry into a defendant's home by shielding himself behind a private citizen
who actually made the entry when the private individual is an agent of the State. Walters v. State,
680 S.W.2d 60, 62 (Tex. App.--Amarillo 1984, no pet.).

 Nevertheless, the State continues to argue that the marihuana was in plain view and
that further investigation may be conducted if probable cause arises from plain view. The State
cites White v. State, 729 S.W.2d 737 (Tex. Crim. App. 1987). What the State overlooks is that
to properly seize evidence under the "plain view" exception to the warrant requirement, police
officers must have had the right to be where they were when the discovery was made. State v.
Haley, 811 S.W.2d 600, 603 (Tex. Crim. App. 1991). Since the officers were not lawfully in the
location by virtue of a warrant or some exception to the warrant requirement, the State cannot
properly claim that probable cause arose out of unauthorized plain view so as to justify Deputy
Ballard's search inside a drawer in a bedroom for other contraband. The State's alternative
contention is without merit.

 The order deferring adjudication of guilt is reversed and the cause is remanded to
the trial court.



 

 John F. Onion, Jr. Justice

Before Justices Powers, B. A. Smith and Onion*

Reversed and Remanded

Filed: August 30, 1995

Publish









* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1.   The record shows that Charlie lived with his mother in another county, but visited
appellant by virtue of a court order. The record is not clear as to when the Officers received
the tip, but in oral argument before this Court it was indicated without dispute that the
report had been made to officers in another county some months earlier.
2.   No findings of fact or conclusions of law were made or filed.
3.   The same is true of Article I, section 9 of the Texas Constitution. Kolb, 532 S.W.2d at
89-90.
4.   There was no evidence how the officers expected to search the house except upon a
possible anticipatory consent to search.
5.   The stipulated evidence at the suppression hearing showed that Mrs. O'Brien was "later
identified" as appellant's mother-in-law. Semmler's testimony made no direct reference to
the relationship.
6.   The single point of error is based on the Fourth Amendment. Appellant has not offered
on appeal a separate analysis based on a state constitutional claim under article I, section 9
of the Texas Constitution. When briefing constitutional questions, attorneys should carefully
separate federal and state constitutional issues into separate points of error and provide
substantive analysis or argument on each separate ground. McCambridge v. State, 712
S.W.2d 499, 501-02 n.9 (Tex. Crim. App. 1986), cert. denied, 495 U.S. 910 (1990). If sufficient
distinction is not provided, the ground may be properly disregarded. Id.; Robinson v. State, 831
S.W.2d 216, 222 n.4 (Tex. Crim. App. 1991); Heitman v. State, 815 S.W.2d 681, 690 n.23 (Tex.
Crim. App. 1991); see also Muniz v. State, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993). 
Normally, appellate courts will decline to make state constitutional arguments for appellants. See
Corwin v. State, 870 S.W.2d 23, 27 n.2 (Tex. Crim. App. 1993); Johnson v. State, 853 S.W.2d
527, 533 (Tex. Crim. App. 1992).
7.   The State does not rely upon Charlie's consent to search the house. Officer Semmler
testified that the officers did not seek Charlie's consent, and the State does not contend that
Charlie's nonverbal actions constituted consent to search. In fact, the validity of the consent
of a twelve-year-old child to a full house search by the police may be questionable,
particularly where the crime has not been committed against him. See 3 Wayne R. LaFave,
Search and Seizure § 8.4(c) (1987); Reynolds v. State, 781 S.W.2d 351, 355 (Tex. App.--Houston
[1st Dist.] 1989, pet. ref'd).