11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Dennis Ray Savard

Appellant

Vs.                   No.
11-01-00089-CR B Appeal from Erath County

State of Texas

Appellee

 

Appellant
was convicted of the felony offense of attempting to manufacture
methamphetamine of 4 grams or more but less than 200 grams.  The trial court assessed his punishment at
confinement for 20 years and assessed a $5,000 fine.  Appellant argues in two points of error that:  (1) the trial court erred in denying his
motion to suppress because there was an illegal search; and (2) the evidence
was insufficient to support a criminal attempt conviction.  We affirm.

                                                                Background Facts

On January
1, 2000, at about 2:30 p.m., Deputy Sheriff Bob Gonzales of the Erath County
Shertiff=s Department responded to a domestic violence
call at the rural residence of B. J. Russell. 
Upon arrival, Deputy Gonzales was met at the main house by B. J. Russell
and his son Joe Russell.  B. J. Russell
informed Deputy Gonzales that another son, Timothy Russell, was Adoped up@ and trespassing, that Timothy had assaulted Joe, and that Timothy and
appellant had retreated to a small residence behind the main house.  Both houses were located on 77 acres owned
by B. J. Russell.   B. J. Russell also
told Deputy Gonzales that Timothy and appellant had stolen his electric
generator.       Deputy Gonzales noticed two rifles leaning up against a fence
nearby, but B. J. Russell said that he did not know where they came from.  Deputy Gonzales then called for backup
before approaching the smaller residence where Timothy and appellant had
fled.  Deputies Jimmy Jackson, Jack Carr,
Larry Wand, and Jason Upshaw came to assist Deputy Gonzales.  After the officers surrounded the smaller
residence, Deputy Carr saw a man walk out of the house toward a fence in a
brushy area and then return to the dwelling. 
Timothy and appellant were then ordered out of the house.  








Deputies
Carr, Wand, and Upshaw made a protective sweep of the house.  During the sweep, Deputy Upshaw noticed rock
salt throughout the house along with an unattached propane bottle.  He later testified that these items were
associated with the manufacture of methamphetamine.  At the time of the sweep, no items of evidence were seized by the
deputies.  Deputies Wand and Carr then
obtained a written consent to search form signed by B. J. Russell.  Timothy and appellant were arrested  for criminal assault and theft and
transported to the Erath County Jail.

The
deputies searched the premises and found a bag near the brushy area where
Deputy Carr had seen the man walk.  The
bag contained methamphetamine and marihuana. 
Deputy Carr also located a glass jar with a hose that is commonly used
in the manufacture of methamphetamine. 
A little later, Deputy Tom Green arrived with a drug dog that alerted on
Timothy=s truck. 
Methamphetamine was found in the truck. 


Mark Goetz
of the S.T.O.P. Narcotics Task Force arrived at about 5:30 p.m.; and he made a
brief preliminary search of the outside area, finding evidence at a burn pit of
numerous starting fluid cans with holes punched in the bottom.  At that point, Officer Goetz stopped the
consent search to obtain a search warrant. 
At 10:29 p.m. on January 1, 2000, a search warrant was issued.  Upon return to the scene, Officer Goetz
secured the premises to wait until daylight to execute the warrant because
there was no electricity for lighting at the residence.  Officers executed the search warrant early
the next morning.  Numerous items
associated with the manufacturing of methamphetamine were located. 

                                                               Standard of Review








In
reviewing a trial court's ruling on a motion to suppress, appellate courts must
give great deference to the trial court's findings of historical facts as long
as the record supports the findings. 
Guzman v. State, 955 S.W.2d 85 (Tex.Cr.App.1997).  We must afford the same amount of deference
to the trial court=s
rulings on Amixed questions of law and fact,@ such as the issue of probable cause, if the
resolution of those ultimate questions turns on an evaluation of credibility
and demeanor.  Guzman v. State, supra at
89.  Appellate courts, however, review
de novo Amixed questions of law and fact@ not falling within the previous
category.   Guzman v. State, supra.  When faced with a mixed question of law and
fact, the critical question under Guzman is whether the ruling
"turns" on an evaluation of credibility and demeanor.  Loserth v. State, 963 S.W.2d 770, 773
(Tex.Cr.App. 1998).  A question
"turns" on an evaluation of credibility and demeanor when the
testimony of one or more witnesses, if believed, is enough to add up to what is
needed to decide the substantive issue. 
Loserth v. State, supra.  We must
view the record in the light most favorable to the trial court=s ruling and sustain the trial court=s ruling if it is reasonably correct on any
theory of law applicable to the case. 
Guzman v. State, supra.

                                                                        Consent

In his
first point of error, appellant claims that B. J. Russell lacked authority to
consent to the search of the premises. 
Even where the person has authority to consent, the State must prove by clear
and convincing evidence that the consent was given freely and voluntarily.  Bumper v. North Carolina, 391 U.S. 543
(1968); Paulus v. State, 633 S.W.2d 827, 850 (Tex.Cr.App.1982).  Whether consent to search was voluntary is a
question of fact to be determined from the totality of the circumstances.  Brem v. State, 571 S.W.2d. 314, 319
(Tex.Cr.App.1978).  A valid consent to
search may be given not only by the defendant but also by anyone who possesses
common authority over, or other sufficient relationship to, the premises or
effects to be searched.  United States
v. Matlock, 415 U.S. 164, 171 (1974). 
It is well established in Texas that third parties have authority to
consent to a search when they have equal control over and equal use of the
premises being searched.  Fancher v.
State, 659 S.W.2d 836, 838 (Tex.Cr.App. 1983). 

The
totality of the circumstances reflects that B. J. Russell=s consent was given freely and
voluntarily.  When hearing a motion to
suppress, the trial court may believe or disbelieve any or all testimony and
evidence, and an appellate court will not disturb any finding that is supported
by the record.  Paulus v. State, supra
at 851; Green v. State, 615 S.W.2d 700, 707 (Tex.Cr.App.1980), cert. den=d, 454 U.S. 952 (1981).  B. J.
Russell testified that he understood that, by signing the consent form, he
authorized the officers to search the smaller residence.  The officers testified that B. J. Russell
had advised them that both Timothy and appellant were trespassing and that they
had stolen his generator.  The trial
court could have disbelieved B. J.=s testimony that he did not fully understand that form. 








B. J.
Russell did have equal control over and equal use of the residence.  B. J. Russell testified that Timothy=s right to live in the residence was
conditioned on employment with B. J. Russell=s Acowhorn business@ and that Timothy=s employment had ended in November 1999 after
a dispute.  B. J. Russell testified that
he paid Timothy $20,000 and gave him a 1998 pickup for his part of the business
so Timothy could move back to Fort Worth with his wife.  B. J. Russell testified that he believed
that Timothy had moved out and that he had had the electricity and water cut
off because the residence was vacant.

Finally,
the record reflects that the officers had a reasonable belief that B. J.
Russell possessed authority to consent to the search of the residence.  In Riordan v. State, 905 S.W.2d 765, 771
(Tex.App. B Austin 1995, no pet=n), the court held that, when the facts do
not support a finding of actual authority to consent to search, a search is
reasonable when the consent-giver apparently has actual authority.  A warrantless entry does not violate the
Fourth Amendment when such entry is based upon the consent of a third party
whom the officers, at the time of the entry, reasonably believe possesses
common authority over the premises, but who in fact does not possess such
authority.  Illinois v. Rodriguez, 497
U.S. 177, 185-86 (1990).  There is
sufficient evidence to support a finding that B. J. Russell owned the property,
that Timothy and appellant were trespassing at the time, and that B. J. Russell
gave a valid consent.

                                                                  Search
Warrant

Appellant
argued that the affidavit for the issuance of the search warrant was
insufficient to show probable cause. 
The affidavit must contain factual allegations; conclusory statements
cannot be considered in the probable cause determination.  Illinois v. Gates, 462 U.S. 213, 239
(1983).  If the warrant is issued
pursuant to TEX. CODE CRIM. PRO. ANN. art. 18.02(10) (Vernon Supp. 2001), the
affidavit must set forth sufficient facts to establish the following:  (1) a specific offense has been committed;
(2) the property to be searched or items to be seized constitute evidence of
the offense or evidence that a particular person committed the offense; and (3)
the property or items are located at or on the person, place, or thing to be
searched.  TEX. CODE CRIM. PRO. ANN.
art. 18.01(c) (Vernon Supp. 2001). 
However, if the officer has sufficient personal knowledge to swear to
sufficient facts to establish probable cause, the affidavit is supportable
based upon the officer=s
direct observations.  Rangel v. State,
435 S.W.2d 143, 144 (Tex.Cr.App.1969); Liebman v. State, 652 S.W.2d 942, 949
(Tex.Cr.App.1983).








We find
that the affidavit established probable cause based on the direct observations
of Officer Goetz.  The affidavit
indicates that Officer Goetz searched the property and found Prestone starting
fluid cans that had puncture marks on the bottom which was common in the
manufacture of methamphetamine. 
Therefore, we hold the affidavit to be sufficient and overrule appellant=s first point of error.

                                            Legal
and Factual Sufficiency of the Evidence

In his
second and final point of error, appellant argued that there was factually
insufficient evidence to Alink@ him to the attempt to manufacture
methamphetamine.[1]  Evidence is legally sufficient when, viewed
in the light most favorable to the prosecution, it is sufficient to permit a
rational trier of fact to find all the essential elements of the charged crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664
(Tex.Cr.App.2000).  In order to determine
if the evidence is factually sufficient, we must review all the evidence and
determine whether the verdict is so against the great weight of the evidence as
to be clearly wrong and unjust.  Johnson
v. State, 23 S.W.3d 1 (Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404
(Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). 

The record
shows that the house where appellant was staying was a virtual drug lab.  Appellant even admitted that such was
probably the case.  Appellant had lived
in the house continuously from June 1998 until July 1999 when he was
incarcerated.  Even though Timothy was
not there, appellant returned to the residence on December 24, 1999; and
appellant stayed there for at least 5 days prior to the search on January 1,
2000.  Deputy Upshaw testified that all
the constituent elements of a ANazi@[2] methamphetamine lab were present and that
the manufacturing process was either being started or had just been
completed.  Further, Officer Goetz
testified that the elements linking appellant to the attempt to manufacture
methamphetamine were:  (1) that the
activities of the home were consistent with a methamphetamine manufacturing
lab; (2) that he was present on the day the evidence, including
methamphetamine, was discovered; and (3) that appellant=s property at the residence indicated that he
had a history of residing at, or being involved with, the residence.  








We hold
that the evidence is both legally and factually sufficient to show that
appellant attempted to manufacture methamphetamine.  The jury=s
verdict is not against the great weight of the evidence.  We overrule appellant=s second point of error.

                                                                This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

TERRY
McCALL

JUSTICE         

 

November 8, 2001

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











[1]Although appellant does not state whether he is
challenging the legal sufficiency or the factual sufficiency, it appears that
appellant is challenging the factual sufficiency.





[2]The word ANazi@ refers to the process by which pseudoephedrine is
extracted from over-the-counter cold medications and then converted into
methamphetamine.