NO. 07-10-00266-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



MAY
25, 2011

 



 

DEBORAH A. PEREA, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE COUNTY COURT AT LAW NO. 1
OF LUBBOCK COUNTY;

 

NO. 2008-452,099; HONORABLE LARRY B. "RUSTY" LADD, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

Appellant, Deborah A. Perea, appeals her conviction by a jury for the offense of
possession of marijuana in an amount of not more than two ounces.[1]  The same jury assessed her punishment at
confinement in the Lubbock County Jail for a term of 105 days and a fine of
$2,000.  Appellant appeals contending
that the trial court committed reversible error by denying her motion to
suppress the evidence seized by the police after they gained entry into the
residence where appellant was found.  We
will affirm the judgment of the trial court.

Factual and
Procedural Background

On August 16, 2008, at approximately
4:15 a.m., officers of the Lubbock Police Department were dispatched to 1109 43rd
Street in reference to a 911 hang-up call. 
The officers that went to the location were Officers Carroll and Comacho.  The
testimony at trial developed that, as a matter of policy, officers are always
dispatched to the location of a 911 hang-up call.  This is so because the person making the call
could have been forced to hang up in a domestic violence situation or could be
suffering a medical condition that resulted in a hang-up.  In general, the officers are attempting to
conduct a welfare check when they are dispatched on a 911 hang-up.  

Officer Carroll was the lead officer
responding to the call.[2]  Upon arrival at the residence, Officer
Carroll went to the front door and knocked. 
No one answered, so he knocked again. 
While waiting to see if anyone was going to answer the knock at the
front door, Comacho stepped to the side and observed
an individual, later identified as Sergio Gonzalez, either standing in the door
of the side entrance to the residence or preparing to exit the side door.  Comacho approached
Gonzalez and advised him that the police were there because there had been a
911 hang-up call emanating from the residence. 
Carroll, having observed Comacho step to the
side of the residence, joined Comacho at the side
door.  Comacho
testified that, after advising Gonzalez that the officers needed to go inside
the residence to determine that everything was all right, they requested
permission from Gonzalez to enter the residence and that Gonzalez gave
permission to enter.

Upon entry into the house, Comacho and Carroll encountered a number of adults sitting
in the living room.  From the testimony
at trial, the number of adults in the living room was three or four.  The adults in the living room included
appellant.  The officers requested
permission to walk through the residence to make sure everything was okay.  The officers were advised they could look
through the residence.  

Initially, appellant opened the door
to the first bedroom, and Comacho shined his
flashlight in the bedroom and observed a number of children sleeping.  At approximately the same time, Carroll
entered a second bedroom and observed marijuana and smoking paraphernalia next
to the bed.  Comacho
walked to the second bedroom and observed similar items.  The officers returned to the living area and
asked to whom the marijuana belonged.  A
male, who identified himself as Justin Martinez, claimed ownership of the
marijuana and the residence.  As the
police were placing him under arrest, appellant stepped forward and claimed the
marijuana was actually hers.  Appellant
provided enough details about exactly where the marijuana was located in the
bedroom to convince the officers of the truthfulness of her admission.  Appellant was subsequently arrested for
possession of marijuana.

Prior to trial, appellant’s trial
counsel filed a motion to suppress the seizure of the marijuana, contending
that the police seized the marijuana without a warrant and that they did not
have consent from anyone authorized to grant consent to enter the
residence.  The trial court carried the
motion to suppress until such time as the evidence at issue was offered during
the trial.  When the State offered the
marijuana into evidence, appellant’s counsel objected on the basis set forth in
the motion to suppress, and the trial court conducted a hearing outside the
presence of the jury.  At the conclusion
of the hearing, the trial court denied the motion and, initially, did not make
findings of fact and conclusions of law. 
After the State rested its case in chief, Gonzalez testified.

Gonzalez claimed that he was outside
the side door entrance to the residence and that neither officer ever asked
permission to enter the residence.  In
fact, upon cross-examination, Gonzalez testified that he told the officers that
they could not come into the residence. 
Appellant then testified that she was immediately behind Gonzalez when
they encountered officers Carroll and Comacho.  Appellant also testified that she did not
hear the officers ask permission to enter the residence, nor did she hear
Gonzalez tell the officers that they could enter the residence.  Appellant did admit that she heard Comacho tell Gonzalez that there had been a 911 hang-up
call and that the officers needed to make sure everything was all right in the
residence.  At the conclusion of
appellant’s testimony, trial counsel reurged the
motion to suppress the evidence.  The
trial court again overruled the motion; however, this time the trial court made
specific oral findings of fact and conclusions of law on the record.  The record reveals that the trial court made
the following findings of fact:

1)    Officers Carroll and Camacho responded to a “911
hang-up” call at the location in question;

 

2)    At the residence in question, the officers encountered
Sergio Gonzalez immediately at the side door of the residence;

 

3)    The officers told Sergio Gonzalez why they were there
in reference to the 911 call, and requested consent to enter the residence to
check on the welfare of the occupants in that context;

 

4)    Sergio Gonzalez gave consent to the police officers to
enter the residence;

 

5)    That the officers searched the interior of the
residence for signs of a domestic assault or other threatening circumstances that
prompted a 911 call to be interrupted;

 

6)    That the search was conducted in a manner consistent
with that search, not with a drug or drug paraphernalia search; and, 

 

7)    That items of evidence including the marijuana that is State’s exhibit
Number Nine and paraphernalia that is State’s Exhibit number Three, Five and
Seven were found in plain view within the residence.

Those findings of fact supported the
following conclusions of law found by the trial court:

1)    The search of the residence in
question was a warrantless search; 

2)    Officers had consent from an apparent authorized
person to conduct the search;

 

3)    Officers were permitted under the exigent
circumstances doctrine to conduct said search;

 

4)    The evidence gathered in the course of that search [were] legally obtained.

The jury
found appellant guilty and assessed her punishment at 105 days in the Lubbock
County Jail.  It is from this verdict
appellant appeals contending that the trial court’s ruling on the motion to
suppress was in error.

 

Standard of Review

            To
review the denial of a motion to suppress, we apply a bifurcated standard of
review.  See Hubert v. State,
312 S.W.3d 554, 559 (Tex.Crim.App.
2010).  We review the trial court’s
application of the law to the facts de
novo.  Id.  However, we defer to the trial court’s
determination of credibility and historical fact.  Id. 
As to the specific issue of whether a third party had actual authority
to consent to a search or whether it was reasonable for an officer to decide
that a third party had apparent authority to consent to a search, those issues
should be treated as mixed questions of law and fact to be examined under a de novo standard.  Id. at 559-60.  Where a trial court has made findings of
fact, as is the case here, we review the record to determine whether the
evidence, viewed in the light most favorable to the trial court’s ruling,
supports the fact findings entered.  See State v. Kelly, 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). 
After the determination regarding support for the findings of fact, we
review the trial court’s application of the law to those facts de novo. 
Id.  As reviewing courts,
we are required to uphold the trial court’s ruling if it is supported by the
record and correct under any theory of law applicable to the case, even when
the trial court may have given an erroneous reason for its ruling.  See Armendariz
v. State, 123 S.W.3d 401, 404 (Tex.Crim.App.
2003).  

Consent to Search

            The
record clearly demonstrates, and the parties agree, that this search was
conducted without benefit of a search warrant and is, therefore, per se unreasonable.  See Wiede
v. State, 214 S.W.3d 17, 24 (Tex.Crim.App.
2007).  One of the exceptions to the
warrant requirement recognized by the courts is the voluntary consent to search.  See Maxwell v. State, 73 S.W.3d 278, 281 (Tex.Crim.App.
2002).  Consent must be established by
clear and convincing evidence under Texas constitutional standards.  Id. 

Analysis

            We
begin our analysis with the findings of fact entered by the trial court.  The trial court specifically found that
Gonzalez was initially met by the officers at the side door to the residence
and not outside that door.  Further, the
trial court found that Gonzalez was asked for permission to enter the residence
and that Gonzalez gave the officers permission to enter the residence.  Our review of the record reveals support for
the trial court’s findings of fact.  See
Kelly, 204 S.W.3d at 818.  Having determined that the trial court’s
findings are supported in the record, we move on to a de novo consideration of the application of the law to the facts.

            The
ultimate question facing the Court is whether the officers were reasonable in
accepting the apparent authority of Gonzalez to consent to the entry into the
residence.  See Hubert, 312 S.W.3d at 559-60. 
We make this determination by examining the totality of the
circumstances faced by the officers at the time they decided to ask Gonzalez
for consent to search.  See id.
at 560. 
Officers were called to the residence in the early morning hours in
regards to a 911 hang-up call.  The
testimony revealed that 911 hang-up calls are treated very particularly under
the policies of the Lubbock Police Department. 
When the officers approached the front door and knocked, more than once,
no one answered the knock.  Upon going to
the side of the residence, Comacho noticed Gonzalez
in the doorway of the side door or just inside the side door.  When approached by the officers, Gonzalez was
advised why the officers were there. 
Subsequently, when permission to enter the residence was requested,
Gonzalez said the officers could go in. 
It was only after the officers had found the marijuana and the
paraphernalia that anyone, other than Gonzalez, stepped forward to accept
ownership of the house.

            In
analyzing the requirement that the officers acted reasonably in believing that
Gonzalez had the authority to permit entry, we are reminded of Justice Scalia’s
comments in Illinois v. Rodriguez, 497 U.S. 177, 187, 110 S.Ct 2793, 111 L.Ed.2d 148 (1990):

It is apparent that in order to satisfy the “reasonableness”
requirement of the Fourth Amendment, what is generally demanded of the many
factual determinations that must regularly be made by agents of the government –whether
the magistrate issuing a warrant, the police officer executing a warrant, or
the police officer conducting a search or seizure under one of the exceptions
to the warrant requirement—is not that they always be correct, but that they
always be reasonable.

 

            Our
review of the totality of the circumstances in conjunction with the trial
court’s findings of fact, which are supported in the record, convince us that
the officers were in fact acting reasonably when they accepted Gonzalez’s
permission to enter the residence.  See
Hubert, 312 S.W.3d at 559-60.  Further, the evidence supporting the
officers’ decision is clear and convincing evidence.  See Maxwell, 73
S.W.3d at 281.

            The
cases urged by appellant to support her position do not appear to the Court to
be factually applicable.  Riordan v.
State, cited for the proposition that, in ambiguous circumstances, law
enforcement cannot be allowed to proceed without further inquiry into the
actual authority of the person granting permission to search, is factually very
distinguishable from the case before us. 
See 905 S.W.2d 765, 771 (Tex.App.—Austin 1995, no pet.).  In Riordan, the police knew that the
person from whom they were getting permission to search was an elderly neighbor
and was only babysitting a child at the house. 
Id. at 765.  Further, the police originally entered the
house because, when they knocked on the door, they watched as the elderly lady
fell while trying to answer the door.  Id.  The officers then entered the house in an
attempt to help the elderly neighbor, yet they still later asked her to sign a
consent-to-search form.  Id.  Under those facts, the police did have an
obligation to investigate further on the issue of apparent authority to consent
to search.  Such was not the situation
faced by the officers in this case. 
Appellant also relies on Corea v.
State, 52 S.W.3d 311, 317 (Tex.App.—Houston [1st
Dist.] 2001, pet. ref’d), for the proposition that
ambiguous facts require further investigation about the authority of one to
consent to a search.  In Corea, the officers were relying on the consent of a
co-tenant to search.  However, when it
came to Corea’s bedroom, the co-tenant advised that
no one other than Corea lived in that bedroom.  Id. at 316.  Under those facts the 1st District
Court of Appeals stated that the police were required to make further inquiry
about the authority of the co-tenant to grant permission to search.  Id. at 317.  

            In
both the cases relied upon by appellant, the officers conducting the search had
specific facts at hand that required further investigation.  We are not faced with that same fact pattern
in the present case.  The officers were
acting reasonably in believing that Gonzalez had authority to allow them to
enter into the premises for the limited purpose of the search incident to
investigating a 911 hang-up call.  See
Hubert, 312 S.W.3d at 559-60.  Accordingly, appellant’s single issue is
overruled.

Conclusion

            Having
overruled appellant’s single issue, we affirm the judgment of the trial court.

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

Do not
publish.











[1] See Tex.
Health & Safety Code Ann. § 481.121(a), (b) (West 2010).





[2] During trial Officers Carroll and Comacho
testified that Carroll was in what is known as the Field Training Officer (FTO)
stage of his training to be a police officer and that Officer Comacho was his Field Training Officer.