ROGERS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-529-CR

BROOK ANNETTE ROGERS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

Appellant Brook Annette Rogers appeals her conviction and sentence of four years’ community supervision and a $500 fine for possession of a controlled substance.  In her first point she contends that the trial court erred by denying her motion to suppress evidence obtained through the search of her mother’s, Kelly Rogers, residence without proper consent.  In appellant’s second point, she complains that the trial court abused its discretion in admitting evidence of an extraneous offense that was prejudicial to appellant and without sufficient probative value. We affirm.  

II. Background Facts

On October 19, 2003, a citizen found and turned in appellant’s wallet to Officer Douglas Creasey, a police officer with the Flower Mound Police Department.  The wallet was determined to contain a quantity of methamphetamine.  On November 17, 2003, at approximately 10:00 p.m., Sergeant Colin Sullivan and Corporal Tommy Cox, police officers with the Flower Mound Police Department, arrived at 534 Harvest Hill in Lewisville, Texas to investigate the matter as a narcotics case. 

After Sergeant Sullivan and Corporal Cox knocked on the door and told appellant why they were there, appellant allowed them inside the house.   Corporal Cox asked appellant’s permission to look in the house and appellant responded, “I only stay here.  It is really not my house.”  Appellant then told the officers that the house belonged to her mother, Kelly.

At about that time, Kelly walked in from the back of the house and after the officers showed her their identifications, Kelly stated that it was her house and agreed to allow the officers to search it.  Corporal Cox then asked appellant if there were any drugs or narcotics in the house, and appellant walked into the bathroom that adjoined the living room with Corporal Cox and showed him the narcotics and paraphernalia.

The jury found appellant guilty of possession of a controlled substance and assessed her punishment at two years in the Institutional Division of the Texas Department of Criminal Justice and a $500 fine.  The trial court suspended the imposition of appellant’s sentence and placed her on community supervision for four years and ordered her to pay the $500 fine.

III. Motion to Suppress

In her first point, appellant argues that the trial court erred in denying her motion to suppress because the entry and search of Kelly’s house and her subsequent arrest violated the Fourth Amendment of the United States Constitution and article I, section 9 of the Texas Constitution.  
U.S. Const
. amend. IV; 
Tex. Const.
 art. I, § 9.  
The State contends that the trial court properly denied appellant’s motion to suppress because the search of the house was valid based on the officers’ reasonable belief that appellant’s mother had authority to consent to the search.

Appellant does not distinguish her rights under the United States Constitution and the Texas Constitution from one another.  Therefore, we will only address whether appellant’s rights were violated under the United States Constitution.  
See Dewberry v. State
, 4 S.W.3d 735, 743-44 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000) (addressing only United States Constitution because failed to distinguish rights with Texas Constitution); 
Hale v. State
, 139 S.W.3d 418, 421 (Tex. App.སྭFort Worth 2004, no pet.)  (determining appellant failed to distinguish between United States Constitution and Texas Constitution).

A.  Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State,
 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court's decision, we do not engage in our own factual review.  
Romero v. State,
 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State,
 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. 
 State v. Ross,
 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard, 
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
  Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. 
 Johnson v. State,
 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002);
 
State v. Ballman, 
157 S.W.3d 65, 67 (Tex. App.—Fort Worth 2005, pet. ref’d)
; 
Best,
 118 S.W.3d at 861-62.  However, when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact.  
Johnson,
 68 S.W.3d at 652-53.  
We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

B.  Applicable Facts

At the trial, Sergeant Sullivan testified that after he and Corporal Cox asked for permission to search the residence, appellant responded, “I only stay here.  It is really not my house,” and told the officers that it was Kelly’s house. Appellant told the officers that her son, Cameron, was in the front bedroom sleeping and asked them to be quiet so that he would not wake up.  At about that time, Kelly walked in from the back bedroom and after the officers explained to her why they were there, she stated, “[I]f there is narcotics here, I want it out.”  He stated that there was nothing questionable about Kelly’s consent.  The officers then asked appellant if there were any drugs or narcotics in the house, and appellant walked into the bathroom with Corporal Cox and showed him the narcotics and paraphernalia.  Although Sergeant Sullivan did not go into the bathroom with Corporal Cox and appellant, he could see that after appellant showed Corporal Cox where the narcotics were, Corporal Cox began pulling the items out of a drawer.  Corporal Cox then asked appellant to go into the living room and appellant sat with Sergeant Sullivan and Kelly. 

Sergeant Sullivan further stated that when he and Corporal Cox first arrived at the house, he thought that only appellant and her boyfriend, Randy Spalding, lived there and did not know that it was actually Kelly’s house.  Additionally, he stated that it was his understanding that the bathroom was the common bathroom that guests would use.  Sergeant Sullivan testified that when appellant was asked for consent to search the house, appellant did not say “yes” or “no,” but instead stated that it was her mother’s house.

Corporal Cox testified that when he asked appellant for consent to search the house, she responded that it was not her house.  At about that time, Kelly walked into the living room and Corporal Cox asked Kelly for consent to search. Corporal Cox stated that after he asked Kelly for consent, appellant turned to Kelly “as if she was going to tell her no.”  But Kelly told the officers that it was her house and that they “can search wherever.”  Next, the officers asked appellant if there were any drugs in the house, and appellant led Corporal Cox to the bathroom and said, “[a]nything we have is in here.”  In the bathroom, Corporal Cox discovered narcotics, baggies, pipes, and paraphernalia.  

He stated that appellant did not tell him that it was her bathroom and that he could not search it.  Corporal Cox further testified that he got consent from Kelly, whom he believed to be the owner of the house.  Corporal Cox did not ask if appellant and Spalding had an exclusive right to the bathroom. 

Kelly testified that she allowed appellant and Spalding to move in with her in March 2002.  She stated that she allowed them to live in the front bedroom and bathroom as long as appellant maintained the house and prepared dinner and Spalding maintained the yard, took out the trash, and fixed any minor maintenance problems.  Kelly said that she did not use or clean  appellant’s bedroom or bathroom.

Kelly stated that on November 17, she awoke when she heard male voices in the living room.  When she walked out of her bedroom and into the living room, Kelly stated, “Who the hell are you?” and after the officers identified themselves, she asked to see their identifications and they complied. The officers then asked appellant if they could search the house and appellant responded that she wanted to speak to an attorney or make a phone call.  Corporal Cox told appellant that she could not call anyone.  Kelly testified that appellant asked to speak to an attorney over half a dozen times, and each time, the officers refused her request.

The officers then forced appellant to sit on the ottoman in the entryway and both Sergeant Sullivan and Corporal Cox stood in front of her so that she could not move.  The officers then told appellant that she was going tell them what they wanted to know.  Kelly stated that the officers were very intimidating to appellant and that appellant was scared.

Kelly also testified that the officers asked her if she was aware of any drugs in the house and she said that she was not.  The officers told her that her house was going to be searched one way or another and that she could be arrested if any drugs were found in the house and Cameron could be sent to foster care.  She stated that she asked the officers if she could move Cameron so that he would not wake up, and the officers told her that before Cameron could be moved, her bedroom would have to be searched as well.  Kelly complied with this request and the officers searched her room.

Kelly further stated that after the officers finished searching her bedroom, Corporal Cox began to search appellant’s bathroom.  Kelly testified that she did not give consent for this search.  Corporal Cox then asked appellant if there were any drugs in the house, and appellant stated that there was marijuana in her makeup bag in the bathroom.  Kelly stated that appellant did not go into the bathroom with Corporal Cox.

After Corporal Cox retrieved the makeup bag, he took it into the living room, where Sergeant Sullivan, appellant, and Kelly were sitting, and put it on the coffee table.  Kelly testified that Corporal Cox then got up and went into appellant’s bedroom and found methamphetamine.
(footnote: 2)  Kelly stated that she was scared, but did not take any action against the officers.  Additionally, Kelly said that she paid all of the household bills, including the water and electricity.

The trial court carried the motion to suppress through the trial, and on October 12, the trial court denied appellant’s motion to suppress.  At the end of the trial
, the trial court made findings on the record that (1) appellant and Kelly had mutual use and control over the bathroom and (2) appellant and Kelly had equal authority and Kelly might have had superior authority.

C.  Analysis

The Fourth Amendment protects against unreasonable searches and seizures.  
U.S. Const. 
amend
. IV.  
Pursuant to the Fourth Amendment, a warrantless search of either a person or property is considered per se unreasonable subject to a few specifically defined and well established exceptions.  
Minnesota v. Dickerson
, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); 
see
 
Estrada v. State
, 154 S.W.3d 604, 608 n.12 (Tex. Crim. App. 2005).  Consent to search is one of the well established exceptions.  
Schneckloth v. Bustamonte, 
412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973);
 Estrada
, 154 S.W.3d 
at 608 n.12;
 Carmouche
, 10 S.W.3d at 331.  The protections afforded by the Fourth Amendment may be waived by an individual consenting to a search.  
Rayford v. State,
 125 S.W.3d 521, 528 (Tex. Crim. App. 2003), 
cert. denied
, 125 S. Ct. 39 (2004); 
 Riordan v. State
, 905 S.W.2d 765, 770 (Tex. App.སྭAustin 1995, no pet.).

When relying upon consent to justify the lawfulness of a search, the State has the burden to prove by clear and convincing evidence that the consent was freely and voluntarily given.  
Bumper v. N. Carolina
, 391 U.S. 543, 548, 88 S. Ct. 1788, 1791 (1968); 
see also Corea v. State
, 52 S.W.3d 311, 317 (Tex. App.སྭHouston [1st Dist.] 2001, pet. ref’d).  The burden requires the State to show that the consent was positive and unequivocal, and there was no duress or coercion.  
Meeks v. State
, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985);
 Riordan, 
905 S.W.2d at 770.  The burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.  
See Bumper
, 391 U.S. at 548-49, 88 S. Ct. at 1791-92.  

A warrantless search by law enforcement officers does not violate the Fourth Amendment's guarantee against unreasonable searches and seizures if the officers have obtained the consent of a third party who possesses common authority over the premises or effects sought to be inspected.  
United States v. Matlock
, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974).  "Common authority" rests on "mutual use of the property by persons generally having joint access or control for most purposes."  
Id. 
at 171 n.7, 94 S. Ct. at 993 n.7.  

If consent was not obtained from someone with actual authority to consent to a search, a search may nevertheless be proper if the person giving consent had apparent authority
.  Illinois v. Rodriguez
, 497 U.S. 177, 188-89, 110 S. Ct. 2793, 2801 (1990).  In 
Rodriguez
, the Supreme Court held that a warrantless entry by law enforcement officers onto a person’s premises does not violate the Fourth Amendment where the entry is based upon the consent of a third party whom the officers, at the time of entry, reasonably believed to possess common authority over the premises, but who in fact did not have such authority.  
Id.
 at 188, 110 S. Ct. at 2801.  When an officer acts in good faith in conducting a search based on consent, the evidence may not be excluded merely because the officer made a reasonable mistake about the extent of the consenting party’s authority.
(footnote: 3)  
See id.
 at 184, 110 S. Ct. at 2799; 
see also Mathis
, 2004 WL 2008602, at *4.  

Whether the officers acted reasonably is judged by an objective standard, whether the facts available to the officer when the consent is given would warrant a person of reasonable caution in believing the consenting party had authority over the premises.  
See Rodriguez
, 497 U.S. at 188, 110 S. Ct. at 2801; 
see also Mathis
, 2004 WL 2008602, at *2. The burden cannot be met if the officers, faced with an ambiguous situation, nevertheless proceed without making further inquiry.  
Riordan
, 905 S.W.2d at 771.   

Here, the officers arrived at appellant’s  home to investigate a narcotics case.  When the officers arrived, they were not aware that the house actually belonged to Kelly.  According to the officers, after they identified themselves to appellant and asked her permission to search the house, she responded, “I only stay here.  It is really not my house.”  At that time, Kelly came out of her bedroom and after showing Kelly their identifications, Sergeant Sullivan and Corporal Cox asked Kelly’s permission to search and she gave her consent.  Appellant did not object to the search of the bathroom or tell them that it was her private bathroom.  In fact, appellant led Corporal Cox into the bathroom and showed him where the drugs and paraphernalia were located.  

Appellant argues that Kelly did not have the authority to vicariously consent to the search of appellant’s bathroom and bedroom.  Additionally, appellant contends that it was ambiguous whether Kelly could consent to the search and that the officers should have inquired further into the situation. However, when the officers asked if appellant would consent to the search, she responded that it was not her house.  Further, after Kelly said that it was her house and consented to the search, appellant did not limit the search and tell the officers that the bedroom and bathroom were used by her exclusively.  After careful scrutiny of the record, we hold that it supports a finding that Kelly had apparent actual authority to consent to the search of the bathroom.  We conclude that the trial court correctly determined that the State sustained its burden and that the search was valid.  
See
 
Rodriguez
, 497 U.S. at 188, 110 S. Ct. at 2801.  Because the evidence shows that Kelly gave consent to the search, we hold that the trial court did not err in denying appellant’s motion to suppress.  We overrule appellant’s first point.  

IV.  Extraneous Offense Evidence

In her second point, appellant complains that the trial court abused its discretion in admitting extraneous evidence during the guilt-innocence phase in violation of rule 403 and rule 404(b).

A.  Applicable Law

Rule 403 states,

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.  

Tex. R. Evid.
 403.

Rule 404(b) provides,

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State’s case-in-chief such evidence other than that arising in the same transaction.  

Tex. R. Evid.
 404(b).

B.  Standard of Review

The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion.  
Moses v. State
, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); 
Soto v. State
, 156 S.W.3d 131, 134 (Tex. App.སྭFort Worth 2005, pet. ref’d). That is to say, as long as the trial court’s ruling was within the zone of reasonable disagreement, the appellate court should affirm. 
 Moses, 
105 S.W.3d at 627; 
see also Montgomery v. State
, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1991) (op. on reh’g); 
Karnes v. State
, 127 S.W.3d 184, 189 (Tex. App.སྭFort Worth 2003, no pet.).  To constitute an extraneous offense, the evidence must show that a crime or bad act was committed and that the defendant was connected to it.  
Moreno v. State, 
858 S.W.2d 453, 463 (Tex. Crim. App. 1993), 
cert. denied
, 510 U.S. 966 (1993).

Rule 404(b) prohibits the admission of evidence of “other crimes, wrongs, or acts” in a criminal case to prove that the defendant acted in conformity with his character to commit crimes.  
Tex. R. Evid.
 404(b); 
Marc v. State
, 166 S.W.3d 767, 775 (Tex. App.སྭFort Worth 2005, pet. ref’d).  Such evidence of extraneous offenses may be admitted for other purposes, however, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  
See Moses
, 105 S.W.3d at 626; 
Nguyen v. State
, 177 S.W.3d 659, 666 (Tex. App.སྭHouston [1st 
Dist.] 2005, pet. filed).  The permissible uses listed in rule 404(b) of when character evidence may be used are illustrative, not exhaustive.  
Montgomery
, 810 S.W.2d at 387.  The court of criminal appeals has held that evidence of extraneous transactions may be admitted in drug possession cases whenever they tend “to prove the requisite affirmative link to the contraband.”  
Brown v. State, 
911 S.W.2d 744, 748 (Tex. Crim. App. 1995) (quoting 
Saenz v. State
, 843 S.W.2d 24, 27 (Tex. Crim. App. 1992)).   

C.  Analysis

Appellant‘s complaint relates to the methamphetamine found in her wallet that a citizen found and returned to the Flower Mound Police Department.  During the pretrial hearing, the trial court granted appellant’s motion in limine concerning the wallet and the contents of the wallet.  However, during appellant’s cross-examination of Corporal Cox, the trial court lifted the motion in limine after appellant asked Corporal Cox if he had “anything to share with the jury that would affirmatively link this contraband to [appellant] rather than [Spalding]?”  The trial court stated that it was lifting the motion in limine because appellant opened the door by putting in issue whether the State could affirmatively link appellant with the methamphetamine.  The trial court said, 

But if you hammered that there is no affirmative link in the home, nothing in the home that connects [appellant] with it[,] but the State has something outside the home that connects her with it, then that’s admissible to rebut the inference that you are leaving with the jury that there is no affirmative link between [appellant] and the drugs.

Appellant’s defensive theory was that other individuals, namely Spalding, used the bathroom and that appellant might not have been aware that the drugs were there. On cross-examination, appellant suggested that Corporal Cox could not affirmatively link appellant with the methamphetamine.  Therefore, on redirect, the State was entitled to establish the basis for the officer’s belief that the methamphetamine belonged to appellant.  
See Brown
, 911 S.W.2d at 748.  Because this testimony tended to prove the requisite affirmative links, we hold that the testimony of Corporal Cox concerning the methamphetamine found in appellant’s wallet was not impermissible under rule 404(b).  

We must now determine whether there was any abuse of discretion in admitting the evidence in light of appellant’s objection on relevancy under rule 403.  
Tex. R. Evid.
 403; 
see Montgomery
, 810 S.W.2d at 388; 
Marc
, 166 S.W.2d at 776.  Rule 403 allows the admission of relevant evidence unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion, undue delay, or the unnecessary presentation of cumulative evidence. 
See 
Tex. R. Evid.
 403; 
Marc
, 166 S.W.2d at 776.  Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial.  
Montgomery
, 810 S.W.2d at 389.  In 
Santellan v. State
, the court of criminal appeals restated the factors discussed in 
Montgomery 
that should go into the balancing test:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable--a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury “in some irrational but nevertheless indelible way”;

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; [and]

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.  

939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (footnote omitted); 
Marc
, 166 S.W.3d at 776.  

We now turn to an examination of the factors set out in 
Santellan
.  Here, evidence of the wallet and its contents is probative of the fact that appellant, and not Spalding, possessed the methamphetamine found in the bathroom.  Additionally, the wallet provides the jury with the understanding of why Sergeant Sullivan and Corporal Cox were investigating appellant.  
See Swarb v. State
, 125 S.W.3d 672, 682 (Tex. App.སྭHouston [1st Dist.] 2003, pet. dism’d) (holding evidence of extraneous offense was helpful to the jury’s understanding of possession offense because “it was so intertwined with the charged offense”).  Corporal Cox testified only that appellant was being investigated because a citizen had found a wallet that contained appellant’s identification and methamphetamine.  Additionally, the extraneous act is not any more heinous than the charged offense and therefore the potential for the extraneous offense to impress the jury in an irrational way is slight.  Further, the State did not spend a lot of time introducing the extraneous offense to the jury.  After Corporal Cox testified about the methamphetamine found in appellant’s wallet, the State did not discuss the extraneous offense again.  In fact, the State did not mention the extraneous offense in its closing statement.  However, there was a need for the extraneous offense evidence to be introduced because appellant questioned the State’s affirmative link between appellant and the methamphetamine found in the house.

Finally, immediately before Corporal Cox testified, the trial court provided the jury with a limiting instruction that the methamphetamine found in appellant’s wallet should only be used as an aid to help the jury determine whether or not the drugs found in Kelly’s home belonged to appellant.  We conclude that trial court correctly determined that the probative value of the evidence was not substantially outweighed by its prejudicial effect.  We hold that the trial court did not abuse its discretion in admitting the extraneous offense evidence under rule 403.  Because we determine that the trial court did not abuse its discretion in admitting the extraneous offense evidence, we overrule appellant’s second point.

V.  Conclusion

Having overruled appellant’s two points, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: February 2, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Appellant was not prosecuted for marijuana found in the bathroom or methamphetamine found in her bedroom.

3:
The court of criminal appeals has never adopted the apparent authority doctrine.  
See McNairy v. State
, 835 S.W.2d 101, 105 (Tex. Crim. App. 1991) (noting apparent authority doctrine has not been adopted in Texas).  However, several courts of appeals have recognized the doctrine.  
See
 
Davis v. State
, 93 S.W.3d 664, 668 (Tex. App.སྭTexarkana 2002, pet. ref’d) (recognizing apparent authority of girlfriend when she made statements she lived there); 
Corea, 
52 S.W.3d at 317 (holding brother-in-law’s apparent authority was extinguished when police learned the defendant used bedroom); 
Riordan
, 905 S.W.2d at 771 (determining no apparent authority when officers did not have reasonable belief that mother-in-law had authority to consent); s
ee also Mathis v. State, 
No. 02-02-00320-CR, 2004 WL 2008602, at *6 (Tex. App.སྭFort Worth Sept. 7, 2004, pet. ref’d) (not designated for publication) (holding management had apparent authority to consent to search of defendant’s vacant apartment).